732 F.2d 548
 5 Employee Benefits Ca 1705
 Robert G. HOLLIDAY, on behalf of himself and all other
persons similarly situated, Plaintiff-Appellant,
v.
XEROX CORPORATION, Xerox Corporation Profit Sharing
Retirement Plan, and Xerox Corporation Retirement
Income Guaranty Plan, Defendants-Appellees.
 No. 83-1058.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 7, 1984.
Decided April 25, 1984.
 
 James E. Brenner, argued, William V. Lewis, Fischer, Franklin, Ford, Simon & Hogg, Detroit, Mich., for plaintiff-appellant.
 Linda O. Goldberg, Miller, Canfield, Paddock, Stone, Detroit, Mich., Alfred H. Hoddinott, Jr., argued, Stamford, Conn., for defendants-appellees.
 Before MERRITT and KRUPANSKY, Circuit Judges, WEICK, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 This is an ERISA case. Many years ago, Xerox began establishing with company funds two pension fund accounts for each employee, neither of which provided for a uniform employee minimum pension floor. The first account, labeled the "optional account," is subject to limited encroachment prior to retirement; and the second, labeled the "retirement account," is reserved solely for retirement. Both are used to purchase annuities upon the retirement of the employee. More recently, Xerox decided to fill a gap by establishing a third pension program, called the Retirement Income Guarantee Plan (RIGP), ensuring that each employee would receive the greater of the income from his retirement account or a minimum pension each year. Under the formula devised for the new program, the annuity payments made under the retirement account, but not the payments made from the optional account, are included within the guaranteed minimum and are subtracted as a setoff in order to arrive at the amount of benefits to which a retiree is entitled.
 
 
 2
 Because some employees--those formerly employed by companies acquired by Xerox by mergers--had at the time of merger deposited their existing pension accounts in the Xerox optional or encroachment account, Xerox transferred the funds so deposited by merged employees from this account to the retirement account so that pension payments derived from these transferred funds would be used as an offset against the guaranteed payments created under the new minimum payment program.
 
 
 3
 The question presented is whether the transfer of funds from one pension account to another within the company's pension plan, and the subsequent use of those funds as a setoff in calculating the retirement income owed to employees under the new guaranteed minimum retirement income plan, violates the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1103(c)(1) (1976 & Supp. IV 1980), which prohibits an employer from misapplying pension fund assets for its own benefit.[1]
 
 
 4
 In this interlocutory appeal under Rule 54(b), Fed.R.Civ.P., and 28 U.S.C. Sec. 1292(b), plaintiff Robert G. Holliday contests the decision of the District Court dismissing one count of his six-count class action, and in the alternative granting a partial summary judgment to defendants Xerox Corporation and two of its affiliated pension funds. The District Court held that Xerox did not violate ERISA when it transferred funds between the two accounts. 555 F.Supp. 51 (E.D.Mich.1982). We agree that the transfer and subsequent use of those funds as a setoff in calculating the retirement income owed to Xerox employees under a new minimum retirement income plan did not result in a prohibited benefit to Xerox under ERISA. We therefore affirm the decision of the District Court.
 
 
 5
 Plaintiff contends that Xerox's transfer of the funds from the optional accounts of the employees of the acquired company employees to the retirement accounts, and the subsequent setoff of those funds under RIGP, operates to "benefit" Xerox in violation of ERISA. ERISA was enacted in order to deal with the problems faced by retired persons who were left without pension income, either because they were not "vested" or guaranteed in a pension plan, or because the assets or the plan had been dissipated. The legislative history of the Act reveals that Congress' main concern was with "improving the fairness and effectiveness of qualified retirement plans" so that "individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire." H.R.Rep. No. 807, 93rd Cong., 2d Sess. 8, reprinted in 1974 U.S.Code Cong. & Ad.News, 4639, 4670, 4676-77.
 
 
 6
 To ensure that employees who participate in pension plans "actually receive benefits and do not lose their benefits as a result of unduly restrictive forfeiture provisions or failure of the pension plan to accumulate and retain sufficient funds to meet its obligations," id. at 4677, ERISA establishes minimum rules for employee participation, see 29 U.S.C. Secs. 1051-61 (1976 & Supp. IV 1980); fiduciary standards for plan trustees, see id. Secs. 1101-04; and an insurance program for situations where pension plans terminate with insufficient funds, see id. Secs. 1341-48. At the same time, recognizing that pension plans are voluntarily created by employers, Congress intended to "avoid making these standards so tough that they will actually discourage the creation of new pension plans" since "[t]he purchase of this pension legislation is not to establish an ideal pension plan, but rather, to set up certain minimum standards to assure that all workers receive the pension benefits that they have earned." 119 Cong.Rec. 30,041 (1973) (remarks of Senator Bentsen).
 
 
 7
 The provision of ERISA at issue here states that "the assets of a [pension] plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to the participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. Sec. 1103(c)(1) (Supp. IV 1980). Plaintiffs urge that Xerox violated this provision by transferring funds to the retirement account and then providing that they be offset against the RIGP benefit, because in so doing, Xerox reduced the amount of money it would have to contribute to fund RIGP. According to plaintiffs, ERISA does not contemplate that employers will set off potential income from private pension funds against the amount owed to the employee by the same employer under a separate pension fund. Moreover, plaintiffs argue, ERISA prohibits employers from taking any actions with regard to pension plans which, however incidentally, "inure to [the employer's] benefit" in any way. We disagree.
 
 
 8
 Erisa itself establishes that it is permissible for a pension plan to provide for the offset of social security benefits. See 29 U.S.C. Sec. 1054(b)(1)(B)(iv) (1976). The Supreme Court recently applied this analysis to workers' compensation benefits, holding that pension plan provisions for offsets based on workers' compensation awards do not contravene the policies of ERISA. See Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Writing for a unanimous Court, Justice Marshall observed that ERISA nowhere prohibits the calculation of pension plan benefits in which "benefit levels are determined by combining pension funds with other income streams available to the retired employees," and that Congress expressly preserved this option with respect to both social security and railroad retirement benefits. Id. at 514, 101 S.Ct. at 1901. He noted that "Congress was well aware" that this practice of offsetting would "reduce the cost of pension plans to employers" and concluded that Congress "expressly acknowledged the tension between the primary goal of benefiting employees and the subsidiary goal of containing pension costs." Id. at 514-16, 101 S.Ct. at 1901-02.
 
 
 9
 In Kapuscinski v. Plan Administrator, 658 F.2d 427, 429 (6th Cir.1981), this Court interpreted the Supreme Court's decision in Alessi and held that General Motors, as administrator of a pension plan for its employees, could deduct any workers' compensation awards from its retirees' pensions, rejecting the argument that ERISA prohibits such setoffs. We see no difference between the setoffs approved expressly in ERISA and found by the Supreme Court and this Court to be authorized by the Act, and the setoff complained of here. We agree with Judge Feikens that "it seems illogical to argue that pension benefits received from one employer may not be offset against a guaranteed pension amount given by the same employer." Memorandum Opinion at 7, Joint App. at 39.
 
 
 10
 Plaintiff also objects to the transfer of funds to the extent that the funds were placed in the retirement account where they are set off in determining RIGP benefits. He alleges that the transfer benefitted Xerox in violation of ERISA because it, like the setoff, ultimately had the effect of reducing the amount of money Xerox has to contribute to fund RIGP. We do not see the transfer as a prohibited "benefit." As the District Court points out and as our analysis with regard to the setoff establishes, Xerox could have accomplished the same result by mandating in RIGP that funds in employees' optional accounts, as well as funds in their retirement accounts, would be set off against RIGP. Instead, Xerox simply transferred the funds, which were derived from the employees' pension funds in their earlier employment with the acquired companies, to the account which RIGP already provided should be offset. ERISA does not preclude employers from taking such steps to enforce setoffs under legitimate pension plans such as RIGP. Moreover, because RIGP provides a guaranteed minimum income, a strong argument can be made that in transferring the funds and using them as a RIGP setoff, Xerox merely reduced the amount of a net increase in the total amount it will henceforth be required to pay to fund the pensions of its retirees.
 
 
 11
 In short, we find no violation of either the letter or the spirit of ERISA in this transfer and subsequent intercompany offset of retirement funds provided by Xerox against a guaranteed minimum income pension plan also voluntarily provided by Xerox for the benefit of its employees. The language of ERISA stating that "the assets of a plan shall never inure to the benefit of any employer" cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective. As the legislative history makes clear, ERISA recognizes the inherent tension between the desire that employees retire with adequate retirement income and the practical internal pressures exerted on the trustees charged with preserving the assets of the pension fund. While ERISA resolves this conflict resoundingly on the side of the employees, Congress did not intend the Act to penalize employers for exercising their discretion to make rational economic decisions which are both in the best interests of the preservation of the fund and which are also not adverse to the employer's interests. For these reasons, we affirm Judge Feikens' decision.
 
 
 
 [1]
 29 U.S.C. Sec. 1103(c)(1):
 (1) Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.