Joseph R. WALLING, and other individuals similarly situated, Plaintiff,

v.

Edward J. BRADY, Harold R. Brohawn, John D. Daniello, William R. Hickman, Terrence M. Shannon, John W. Stewart, James R. Wahl and Alfred C. Wilson, Jr., as Trustees of the Plumbers and Pipefitters Local Union No. 74 Pension Fund, and Plumbers and Pipefitters Local Union No. 74 Pension Fund, Defendants.

Civil Action No. 94–410 MMS.

United States District Court, D. Delaware.

Feb. 9, 1996.

Richard L. Abbott, of Theisen, Lank, Mulford & Goldberg, P.A., Wilmington, Delaware, for plaintiff.

Perry F. Goldlust, of Heiman Aber & Goldlust, Wilmington, Delaware (David Garcia–Villarreal, of Blackburn & Michelman, P.C., Philadelphia, Pennsylvania, of counsel), for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiff Joseph R. Walling ("Walling") has commenced this action against the Plumbers and Pipefitters Local Union No. 74 Pension Fund ("Pension Fund") and the Pension Fund Trustees [1] ("Trustees") alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor Management Relations Act, 29 U.S.C. § 186. Specifically, plaintiff avers that defendant Trustees have unlawfully diverted pension funds in violation of 29 U.S.C. § 1103(c)(1) and have breached their fiduciary duty owed under 29 U.S.C. § 1104.

On July 19, 1995, the Court certified a plaintiffs' class composed of 54 beneficiaries of the Pension Fund whose interests are identically aligned with those of Walling, the designated class representative. Pending before the Court are cross motions for summary judgment; the Court held oral argument in this matter on October 18, 1995.[2] For the reasons set forth below, the Court will grant plaintiff's motion for summary

judgment and deny defendants' motion for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(a)(1)(B) and (e)(1).

## II. FACTUAL BACKGROUND

The facts in this suit are essentially undisputed. Walling is a participant in the defendant Pension Fund, which is a qualified multi-employer pension plan under ERISA. Complaint, Docket Item ("D.I.") 1 at ¶¶ 4–6; Answer, D.I. 13 at ¶¶ 4–6. The individual defendants are Trustees of the Pension Fund: Four of the Fund's eight Trustees are union representatives; the other four Trustees are from management. D.I. 53 at 6. The Pension Fund is governed by and administered pursuant to the Plumbers and Pipefitters Local Union No. 74 Pension Plan. D.I. 1 at ¶ 6, D.I. 13 at ¶ 6.

In accordance with the provisions set forth in the Pension Fund's Agreement and Declaration of Trust ("Pension Plan"), the Fund's Trustees have the power to "[d]ecide all questions relating to the interpretation of the Trust Agreement and Plan. The exercise of discretion or determination of questions arising in the administration, interpretation and application of the Trust Agreement or Plan shall be final and binding except as otherwise provided by law." Pension Plan, Article V, D.I. 47, Exhibit ("Exh.") B at 13–14. The Trustees also possess the power to "[a]mend, alter or otherwise change the Pension Plan in any way not inconsistent with applicable laws of regulations or government agencies or the provisions of this Trust." *Id.* at 14.

In the management of the Pension Fund, the Trustees retain various professional consultants to assist them in carrying out their fiduciary obligations to the participants and beneficiaries of the Pension Fund. These professionals include accountants, actuaries, attorneys, investment managers, and pension administrators. Trustee Affidavits, D.I. 47,

---

1. The Pension Fund Trustees are defendants Brady, Brohawn, Daniello, Hickman, Shannon, Stewart, Wahl, and Wilson.

2. At the hearing on the cross summary judgment motions, plaintiff conceded that under the United States Supreme Court decision in *Local 144*

*Nursing Home Pension Fund v. Demisay,* 508 U.S. 581, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993), his claim under 29 U.S.C. § 186(c)(5) was not viable, and that summary judgment should be entered against him as to Count I of the Complaint.

Exh. D at 4–7. Many of these advisors regularly attend meetings of the Board of Trustees. Wilson Deposition, D.I. 47, Exh. E at 22; *see also* Minutes of the Meetings of the Board of Trustees for Aug. 24, 1992, Sept. 28, 1992, and Oct. 26, 1992. D.I. 51, Exh. A.

In 1992, following the annual actuarial analysis of the Pension Fund's operations, income, and investments, the Fund's actuarial consultant reported to the Trustees that the Pension Fund was fully funded and was in fact experiencing a surplus. D.I. 47, Exh. D at ¶ 10. In mid–1992, the Trustees discussed among themselves and with their advisers an appropriate course of action with respect to possibly using the surplus to increase plan benefits. *See, e.g.,* D.I. 51, Exh. E at 22, 35. At that time, the Trustees were also aware that the Plumbers and Pipefitters Local Union No. 74 Welfare Fund ("Welfare Fund") was about to adopt a change in its participation requirements for members of that plan.[3] The Welfare Fund, which provides medical and health care coverage to its beneficiaries, was about to start requiring its participants to pay $100 per month into the Welfare Fund for continued coverage. D.I. 47, Exh. D at 9. These Welfare Fund participants had previously received their health care coverage free of charge. *Id.*

At their August and September 1992 Board meetings, the Trustees discussed both the Pension Fund's surplus and the Welfare Fund's new monthly $100 co-pay requirement. D.I. 51 at Exh. A. They entertained their actuary's proposal that an additional $100 per month Pension Fund benefit could be paid to that group of retirees who were also participants in the Welfare Fund. *Id.* The Trustees openly concede that the motivation behind this additional $100 per month Pension Fund benefit was to maintain the purchasing power of those retired Welfare Fund individuals who now shouldered an additional $100 monthly burden, presumably on a fixed income. *See, e.g.,* D.I. 47, Exh. G at 62–63; D.I. 51, Exh. E at 49, Exh. F at 55, Exh. H at 49. The Trustees also considered amending the Pension Fund to increase benefits to all participants by five percent. D.I. 51 at Exh. A.

The Executive Summary of actuarial valuations as presented to the Trustees is set forth in the record as part of the Minutes of the Meetings of the Board of Trustees. *Id.* In that document, the actuary pegged the Pension Fund's current level of surplus at 112%, and projected the actuarial health of the Fund for the proposed benefit increases, if implemented, to be at a level of 96.6%. Upon discussion at their October, 1992 Board meeting, in the presence of the Pension Fund's attorneys, the Trustees unanimously approved the proposed increases. *Id.*

Plaintiff does not participate in the Welfare Fund and thus is not eligible for the extra $100 per month paid to those who participate in both the Pension and Welfare Funds. D.I. 1 at ¶ 8; D.I. 13 at ¶ 8. He seeks to enjoin defendants from paying this enhanced pension benefit exclusively to the eligible subgroup of Welfare Fund/Pension Fund beneficiaries; as alternative relief, he seeks an order retroactively amending the Pension Fund plan to increase benefits by $100 per month for all participants, with damages to be paid both retroactively and prospectively.

## III. DISCUSSION

### A. Summary Judgment Standard—Cross Motions for Summary Judgment

■■■ Both sides have moved for summary judgment in this action. Under the Federal Rules of Civil Procedure, the Court shall grant a motion for summary judgment if it determines "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating that it should prevail under Rule 56(c), see *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86,

---

**3.** The record indicates that the same Trustees who administered the Pension Fund also administered the Welfare Fund. *Compare* Minutes of the Meeting of the Board of Trustees of the Welfare Fund, Sept. 28, 1992, *with* Minutes of the Meeting of the Board of Trustees of the Pension Fund, Sept. 28, 1992. D.I. 51, Exh. A.

106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), which can be accomplished by simply pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Peters Township School Dist. v. Hartford Accident & Indem. Co.,* 833 F.2d 32, 34 (3d Cir.1987). In opposition, the nonmoving party must come forward with evidence supporting a claim that there is a genuine issue of material fact in dispute which requires resolution by the trier of fact. *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ When faced with cross motions for summary judgment, the Court must consider the motions independently. *Williams v. Philadelphia Hous. Auth.,* 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd,* 27 F.3d 560 (3d Cir. 1994). In this case, because the facts are undisputed, the issues presented are legal, rather than factual, and thus are suitable for resolution by judgment as a matter of law. Fed.R.Civ.P. 56(c); *Associated Hardware Supply Co. v. Big Wheel Distrib. Co.,* 355 F.2d 114, 119 (3d Cir.1966).

### B. Diversion of Pension Fund Assets in Violation of 29 U.S.C. § 1103(c)(1)?

ERISA was enacted in 1974, following nearly a decade of Congressional study of the nation's private pension plans and other employee benefit plans. *Moench v. Robertson,* 62 F.3d 553, 560 (3d Cir.), *petition for cert. filed,* 64 U.S.L.W. 3438 (U.S. December 11, 1995). A major goal sought to be achieved by ERISA's enactment was the improvement of "the fairness and effectiveness of qualified retirement plans" so that "individuals who have spent their careers in useful and socially productive work will have adequate incomes to meet their needs when they retire." H.R.Rep. No. 807, 93rd Cong., 2d Sess. 8 *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, 4676–77.

One product of these Congressional concerns was ERISA's anti-diversion provision, which mandates that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Plaintiff contends that payment of additional Pension Fund benefits to Welfare Fund beneficiaries inures to the indirect benefit of the pensioners' employers. D.I. 50 at 21. Because the retired Welfare Fund beneficiaries now copay $100 per month into that Fund, plaintiff argues, the employers are assisted in the maintenance of the viability of the Welfare Fund by the extra flow of income to that Fund. Additionally, plaintiff maintains that any payments made by the employers on behalf of active Welfare Fund participants will necessarily be reduced by the buttressing effect of the influx of the retirees' co-payments.

■ In support of his arguments, plaintiff has cited no authority other than the statute itself. Defendants point to *Holliday v. Xerox Corp.,* 732 F.2d 548 (6th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984), as dispositive. In that case, employees formerly employed by companies acquired by Xerox deposited their existing pension accounts into one of two pension plans funded by Xerox as the employer. *Id.* at 549. Xerox later created a third pension plan and transferred the funds deposited by the acquired employees into the new pension fund. *Id.* As a result, the pension payments derived from those transferred funds would be used to set off retirement income owed to employees under one of the other retirement plans. *Id.* The employees whose accounts were so transferred claimed that their contributions were manipulated in order to reduce contributions to one of the funds on Xerox's part, arguing that doing so violated 29 U.S.C. § 1103(c)(1). The court determined Xerox did not violate the exclusive benefit rule, holding:

> The language of ERISA stating that 'the assets of a plan shall never inure to the benefit of any employer' cannot be read as

a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective. *Id.* at 551; *see also Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 283 (3d Cir.1988) (same, citing *Holliday* ). Stated differently, the issue under 29 U.S.C. § 1103(c)(1) is not whether the employer benefits from any payment arrangement, but whether Plan assets are being used to benefit the employer rather than the Plan participants. *Saylor v. Parker Seal Co,* 975 F.2d 252, 256 (6th Cir. 1992).

■ In this case, plaintiff concedes that any benefit to the employers is indirect at best. D.I. 50 at 22. The evidentiary record shows that the direct and intended beneficiaries of the increased pension payment are participants of the Welfare Fund, whose new $100 monthly Welfare Fund fee would be offset by the increased Pension Fund benefit. Under the rationale of *Holliday,* the Court sees no reason why it should view the Pension Plan amendment as inuring to the benefit of any employer in this multi-employer case. Accordingly, the Court finds the amendment to pass muster under 29 U.S.C. § 1103(c)(1).

## C. Breach of Fiduciary Duty in Violation of 29 U.S.C. § 1104

Plaintiffs also allege that the Pension Fund Trustees are fiduciaries who must comply with the applicable provisions of ERISA. Defendants do not take issue with this. However, plaintiff and defendants part company over whether the Trustees' amendment of the Pension Plan to allow an extra $100 monthly benefit to only those Pension Fund beneficiaries who were also Welfare Fund beneficiaries is a violation of the Trustees' fiduciary duty under 29 U.S.C. § 1104.

■ To assure both the equitable character and the fiscal soundness of pension benefit plans, ERISA requires such plans to "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Moench,* 62 F.3d at 560–61 (quoting 29 U.S.C. § 1102(a)(1)). Under ERISA, a fiduciary is charged with acting "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a). ERISA defines a "fiduciary" as a person who:

> (i) ... exercises any discretionary authority or discretionary control respecting management of such plan ..., or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Fiduciary status is not an "all or nothing" concept; a court must ascertain whether one acts as "a fiduciary with respect to the particular activity in question." *Moench,* 62 F.3d at 561 (citations omitted). The threshold question, therefore, is whether in amending the Pension Plan to impose a new schedule of benefits, the Trustees were acting in their capacity as fiduciaries.

■ Where the administrator of a pension plan is also the employer, unlike the case *sub judice,* the Third Circuit Court of Appeals has recognized that such an employer has dual role: "[W]hen employers wear 'two hats' as employers and administrators, they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Curcio v. John Hancock Mut. Life Ins. Co.,* 33 F.3d 226, 234 n. 10 (3d Cir.1994). For such employers, virtually every circuit has rejected the proposition that ERISA's fiduciary duties attach to that employer's decision to amend an employee benefit plan. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1161 (3d Cir.1990) (collecting cases). Courts have reasoned that an employer who is also a plan administrator acts as a fiduciary only when it functions in its capacity as plan administrator, not when it conducts business that is not regulated by ERISA. *Id.* at 1158; *Izzarelli v. Rexene Prod. Co.,* 24 F.3d 1506, 1524 (5th Cir.1994). Because ERISA does not require the creation of employee pension plans in the first instance, an employer who designs, amends,

or terminates a pension benefit plan is not "administering" a plan and thus does not act as a fiduciary. *Id.; Hozier,* 908 F.2d at 1162. Where a single employer contributes to a pension plan, such a plan creates claims against both the assets in the pension trust and an employer's assets in general. *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505 (2d Cir.1995). The employer must be granted latitude in the sound management of its business to determine the extent of benefits it will guarantee and must be unconstrained by the fiduciary duties imposed by ERISA on plan administration. *Hozier,* 908 F.2d at 1162; *Siskind,* 47 F.3d at 505.

 These principles do not hold true, however, where, as here, the pension plan is a multi-employer pension plan. The amendment to the Pension Plan was authorized by the Plan's Board of Trustees, whose membership was equally divided among union and management representatives. In the multi-employer plan context, plan trustees are treated as fiduciaries and plan amendments are regarded as fiduciary functions. *Id.* Courts have not hesitated to invalidate amendments not made in furtherance of the participants' and beneficiaries' interests as breaches of fiduciary responsibility. *Id.* (citing *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1040 (2d Cir.), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1985); *Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207, 210 (2d Cir.1980)); *Musto v. American Gen. Corp.,* 861 F.2d 897, 912 (6th Cir.1988), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); *Deak v. Masters, Mates and Pilots Pension Plan,* 821 F.2d 572, 581 (11th Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *cf. Geib v. New York State Teamsters Conference Pension and Re-*

*tirement Fund,* 758 F.2d 973 (3d Cir.1985) (trustees' amendment to multi-employer pension plan evaluated under ERISA standard for arbitrariness). In this multi-employer setting, the Trustees are charged with administering "the allocation of a finite plan asset pool to which each participating employer has contributed." *Siskind,* 47 F.3d at 506 (citing *Musto,* 861 F.2d at 912). Accordingly, the Court will treat the Trustees' decision to amend the plan and alter the schedule of benefits as a fiduciary exercise of their administrative discretion under both ERISA and the Plan's own provisions. *See* 29 U.S.C. § 1002(21)(A) (exercise of discretionary authority in the administration of pension plan falls within purview of fiduciary responsibility); D.I. 47, Exh. B at 13–14.

 ERISA requires that the Trustees, as fiduciaries, discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries ... for the exclusive purpose of[ ] providing benefits to participants and their beneficiaries...." 29 U.S.C. § 1104(a)(1)(A)(i); *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1299 (3d Cir.1993) (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 152–53, 105 S.Ct. 3085, 3095–96, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring)); *Deak v. Masters,* 821 F.2d at 579.[4] In addition, an ERISA fiduciary must act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). These requirements are usually referred to as the "duties of loyalty and care," or as the "prudence" and "solely in the interest" requirements. *Moench,* 62 F.3d at 561. The parties dispute how these requirements are

---

**4.** Although not discussed by either side in this case, there is a split of authority as to whether a trustee's fiduciary duty under ERISA runs to the plan as a whole and/or to the individual beneficiaries. *Compare Williams v. Caterpillar, Inc.,* 944 F.2d 658 (9th Cir.1991) (fiduciary's duty under ERISA runs to the plan as a whole; direct action not maintainable by individual participants and beneficiaries) *with Eddy v. Colonial Life Ins. Co.,* 919 F.2d 747, 750 (D.C.Cir.1990) (fiduciary duty owed directly to beneficiary).

The Third Circuit Court of Appeals has held that an ERISA trustee's fiduciary duty does run directly to plan beneficiaries. *Bixler,* 12 F.3d at 1299–1300. Accordingly, a beneficiary or participant may bring a direct action for breach of fiduciary duty against the trustees of an ERISA plan. *Id.* at 1299–1300 and n. 17 (collecting cases); *In re Unisys Corp.,* 57 F.3d 1255, 1260 (3d Cir.), *petition for cert. filed,* 64 U.S.L.W. 3167 (U.S. September 9, 1995).

to be applied to the Trustees' decision to amend the Pension Plan.

Plaintiff argues that the Trustees' amendment altering the schedule of benefits must be evaluated under a strict analysis of their fiduciary duties of loyalty and care as set forth in 29 U.S.C. §§ 1104(a) and (b). *See e.g., Struble v. New Jersey Employees' Welfare Trust Fund,* 732 F.2d 325, 333 (3d Cir. 1984). To the contrary, defendants argue that ERISA affords the Trustees deference in adopting plan amendments as an exercise of their discretion and such discretionary action should not be overturned by the Court absent a clear showing that the action is arbitrary and capricious.

Historically, when reviewing pension plan amendments enacted by the employer in its capacity as plan administrator, the Third Circuit Court of Appeals has held that "amendments to a pension plan are void if the trustees acted arbitrarily and capriciously in enacting the amendment." *Baker v. Lukens Steel Co.,* 793 F.2d 509, 513 (3d Cir. 1986) (quoting *Agro v. Joint Plumbing,* 623 F.2d at 210); *see also Geib v. New York State Teamsters Conference Pension and Retirement Fund,* 758 F.2d at 978. More recently, the Third Circuit appellate court has considered when, if ever, do circumstances require the application of the more stringent "prudent" person standard under ERISA. In *Moench,* the court was faced with deciding which standard applied to a pension administrator's decisions about how to invest assets of the fund. *Moench,* 62 F.3d at 563. The *Moench* plaintiff, like plaintiff Walling, relied heavily on *Struble's* mandate to apply the more stringent standard. *Id.*

 After an exhaustive treatment of precedent under 29 U.S.C. § 1104, the *Moench* court determined that "where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." *Moench,* 62 F.3d at 566 (quoting the Restatement (Second) of Trusts § 187 (1959)). Where a trustee exercises discretion to interpret a plan, "in such circumstances the trustee's interpretation will

not be disturbed if reasonable." *Id.* (quoting *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989)). In other words, as long as the Trustees were making discretionary decisions, the courts will apply a deferential arbitrary and capricious standard of review. *Moench,* 62 F.3d at 566. The stricter standard of review is reserved for situations where pension trustees improperly disregard the valid interest of beneficiaries in favor of third party non-beneficiaries. *Id.* at 565; *see Struble,* 732 F.2d at 333–34.

Under the Pension Plan, the Pension Fund Trustees have the power to "[d]ecide all questions relating to the interpretation of the Trust Agreement and Plan. The exercise of discretion or determination of questions arising in the administration, interpretation and application of the Trust Agreement or Plan" rests in the hands of the Trustees. D.I. 47, Exh. B at 13–14. This same Article imparts to the Trustees the power to "[a]mend, alter or otherwise change the Pension Plan. . . ." *Id.* at 14.

 In this case, when the Trustees amended the Pension Plan, they allocated the Fund's surplus between different groups of beneficiaries and favored the interests of the Pension Fund beneficiaries who were also Welfare Fund beneficiaries. Trustees in multi-employer pension plans are often called upon to discriminate between different classes of beneficiaries:

> When the amount of benefits to which a distinct group of beneficiaries is entitled is at issue, pension trustees must necessarily strike a balance between the interests of the beneficiaries who are in this group and beneficiaries who are not. Because the trustees in these circumstances must reconcile competing interests of different beneficiaries, the trustees' choice cannot be said to violate their fiduciary duty unless it is arbitrary and capricious.

*Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 163 (3d Cir. 1985) (quoting *Edwards v. Wilkes–Barre Publishing Co. Pension Trust,* 757 F.2d 52, 56 (3d Cir.), *cert. denied,* 474 U.S. 843, 106

S.Ct. 130, 88 L.Ed.2d 107 (1985)). At first blush, because the Pension Fund Trustees amended the Pension Plan as an exercise of their discretionary power and chose between different classes of Pension Fund beneficiaries, it would appear that the deferential arbitrary and capricious standard would be appropriate.

Plaintiff argues that in reality, the Trustees did not merely allocate the Pension Fund's surplus between two subgroups of Fund participants. He contends that the Trustees were fiduciaries to both the Welfare Fund participants and the Pension Fund participants; the amendment was driven by the Trustees' concerns for the financial well-being of Welfare Fund participants. The evidentiary record bears this out. For example, defendant Brady felt that only the pensioners that were receiving Welfare Fund benefits were "entitled" to the extra $100 per month. D.I. 51, Brady Deposition at 55. Defendant Wilson admitted that the sole reason for the $100 increase was to cover the $100 Welfare Fund co-pay. D.I. 51, Wilson Deposition at 45. Defendants have no problem conceding that the underlying motivation to so distribute the surplus was to enable the Welfare Fund participants, who were retirees, to maintain the same level of purchasing power. D.I. 47, Shannon Deposition at 62–63.

■■■ Although the $100 increase did not technically benefit anyone outside the pool of Pension Fund participants, the Trustees enacted the amendment to advance non-Pension Fund interests. *See Struble,* 732 F.2d at 334. Such a decision improperly disregards the valid interests of Pension Fund beneficiaries in favor of third parties who, as members of the separate and distinct Welfare Fund, happen to be Pension Fund participants. Under the case law, where the Trustees' action goes beyond a mere balancing of interests between beneficiaries, such fiduciary action would be reviewed under the stricter standard of duty and loyalty. *Id.; Moench,* 62 F.3d at 563, 565; *John Blair Communications, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan,* 26 F.3d 360, 369 (2d Cir.1994).

■■■ In this case, the Court need not decide the question of which standard of review is applicable because it finds that even under the more deferential arbitrary and capricious standard of review, the Trustees' amendment of the Pension Plan violated their fiduciary duty under ERISA. Under the arbitrary and capricious standard of review, a decision of the plan's Trustees may not be overturned "even if the court disagrees with it, so long as the interpretation is rationally related to a valid plan purpose and not contrary to the plain language of the plan." *Moats v. United Mine Workers of Am. Health and Retirement Funds,* 981 F.2d 685, 688 (3d Cir.1992) (quoting *Gaines v. Amalgamated Ins. Fund,* 753 F.2d 288, 289 (3d Cir.1985)); *see also Abnathya v. Hoffmann–La Roche,* 2 F.3d 40, 45 (3d Cir.1993) (plan administrator's decision stands unless found to be "without reason, unsupported by substantial evidence or erroneous as a matter of law").

Plaintiff cites the case of *Winpisinger v. Aurora Corp. of Illinois,* 456 F.Supp. 559 (N.D.Ohio 1978), for its recitation that the effect of a pension plan amendment "must fall evenly on all participants in the Fund." *Id.* at 573. In *Winpisinger,* the plaintiffs alleged that the plan trustees had violated their fiduciary duties under ERISA when they canceled past service credits that certain beneficiaries had accrued. *Id.* at 562. The court viewed the pensioners as losing vested "anticipated retirement benefits" based on their past service credits, and held that ERISA requires the Trustees to "conform to the Plan without preferences amongst either participants or beneficiaries." *Id.* at 573.

■■■ Courts have hesitated to apply the sweeping statements of *Winpisinger* beyond situations where pension beneficiaries are stripped of vested benefits. *See, e.g., Petrella v. NL Indus., Inc.,* 529 F.Supp. 1357 (D.N.J.1982) ("In short, preferential effect alone does not constitute a violation of [29 U.S.C. § 1104]."). Neither the parties nor the Court have been able to point to authority from any jurisdiction that is on point. However, courts have identified four factors that are helpful in analyzing whether an

amendment to an ERISA plan is arbitrary and capricious:

1) the extent to which the participant was an intended beneficiary of the plan;

2) the extent to which the amendment is applied retroactively to strip the participant of previously earned credits;

3) the extent to which he was notified of the amendment;

4) the extent to which it is shown that actuarial concerns require denial of benefits to him.

*Haeffele v. Hercules,* 839 F.2d 952, 958 (3d Cir.1986) (quoting *Baker v. Lukens Steel,* 793 F.2d at 513). Under the first factor, the amendment was intended to directly benefit the Welfare Fund participants, who were only incidentally also Pension Fund participants. Factors two and three, retroactivity and notice, were not implicated in the parties' motions for summary judgment. However, at oral argument, defendants represented to the Court that although the 54–membered plaintiffs' class is not eligible for the extra $100 per month, 354 other Pension Fund participants are receiving the extra benefit. The political reality is, that even if notice had been given, the minority's voice would not have been heard: the vast majority of the participants also held the power to re-elect the union Trustees.[5] Under the final factor, the record evidences no actuarial concerns requiring the payment of the extra benefits to those participants who were also Welfare Fund participants. Although the Court takes judicial notice that the cost of health care premiums is on the rise for *all* Pension Fund participants, the Trustees chose to augment benefits by $100 per month only for those who were also Welfare Fund participants. There was no actuarially-related reason, in terms of the Pension Fund's actuarial status, to discriminate between these two classes of participants. The only

actuarial concerns implicated at all were those of the Welfare Fund.

Additionally, from a policy standpoint, there is an inherent unfairness in manipulating monies contributed for one plan for the benefit of those who participate in a wholly separate entity. By design, the Trustees increased benefits towards alleviating the new burden placed on Welfare Fund beneficiaries, who were forced to make up the actuarial shortfall in the Welfare Fund with a newly-required $100 per month co-pay. Even though technically the increase serves Pension Fund participants, it benefits them *qua* Welfare Fund participants. For all of the above reasons, the Court holds that the amendment cannot be said to be rationally related to the Pension Plan's purpose and is therefore arbitrary and capricious.[6] Accordingly, the Court holds that the amendment was also made in contravention of the Trustees' fiduciary duty owed under 29 U.S.C. § 1104.

### IV. CONCLUSION

For the above stated reasons, the Court finds that the amendment the Pension Fund did not constitute a diversion of assets proscribed by 29 U.S.C. § 1103(c)(1). Nevertheless, in so amending the Pension Plan, the Trustees violated their fiduciary duty owing to the Pension Fund's participants and beneficiaries, and summary judgment will therefore be entered in favor of the plaintiffs' class. The parties shall confer and attempt to arrive at an agreed upon appropriate remedial order on or before March 1, 1996. If they cannot mutually agree upon language for a remedy, they shall request a conference with the Court.

In the interim an order will be entered granting final dismissal to the plaintiff and

---

**5.** Two of the union Trustees, defendants Brady and Wilson, flaunted the amendment to the union membership as part of their subsequent re-election campaign. D.I. 51, Exh. B. at 2–3.

**6.** Although the Court grounds its holding based on a review of the Trustees' amendment under the deferential "arbitrary and capricious" standard, it also holds that the Trustees violated their

fiduciary duty under the "strict or *de novo*" standard of review. Using the same reasoning as outlined above, the Court finds that the Trustees did not act with the "requisite prudence and ... complete and undivided loyalty" to the Pension Fund beneficiaries in enacting an amendment for the purpose of benefitting Welfare Fund beneficiaries. *See Struble,* 732 F.2d at 334.

denying defendants' motion for summary judgment.

An appropriate order will follow.