Martin R. COLLINS; Billy J. Jolly, International Union of Operating Engineers, Local # 12, AFL–CIO, Plaintiffs–Appellants,

v.

PENSION AND INSURANCE COMMITTEE OF THE SOUTHERN CALIFORNIA ROCK PRODUCTS AND READY MIXED CONCRETE ASSOCIATIONS; Southern California Rock Products and Ready Mixed Concrete Associations; Rod Hulet; David Ollis; Al Prevost; Claude Potter; Annette Rodriguez; Judy Harrison, Defendants–Appellees.

No. 95–56862.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1997.

Decided June 9, 1998.

Ralph M. Phillips and Michael S. Villeneuve, Young and Barsh, Encino, California, for plaintiffs-appellants.

Stuart H. Young, Jr., Hill, Farrer & Burrill, Los Angeles, California, for defendants-appellees.

Before: BROWNING, and SCHROEDER, Circuit Judges and RESTANI, Judge.*

PER CURIAM.

Participants in a pension plan and their union sued the administrator of the plan, the Pension and Insurance Committee (the Administrator). Plaintiffs alleged the Administrator breached its fiduciary duties by failing to increase benefits and by accepting contri-

---

* The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by

---

butions from employers at a rate lower than that set by the plan documents. The district court granted summary judgment for the Administrator, and the plaintiffs appeal.

The plan provides benefits to employees covered by collective bargaining agreements between the union and multiple employers in the rock products and ready mixed concrete industries in Southern California. Employers contribute at a specified hourly rate; participants are paid at a rate determined by their total service. There is no guarantee that contribution levels will match benefit levels, and in recent years, the plan has been overfunded. Because the plan's assets have exceeded its actuarially accrued liabilities, some contributions have not been tax-deductible by the employers.

At all relevant times, the Administrator's power to amend the plan unilaterally was governed by the "Eighteenth Amendment" to the plan:

> Notwithstanding subsections (a) and (b) but subject to subsection (d), this Plan may be amended prospectively or retroactively at any time by the Administrator, if required by the Internal Revenue Service for the purpose of obtaining or retaining a favorable determination letter as to the Plan's tax-exempt and qualified status under the Internal Revenue Code.

The Eighteenth Amendment also provided that the plan was not to accept contributions less than those required by collective bargaining agreements involving at least two-thirds of the employers. However, the parties did not specify what contributions could be accepted if no labor agreement remained in effect.

After the collective bargaining agreements expired and ensuing negotiations failed, the employers declared an impasse and implemented their final offer. This offer included pension plan contributions at a lower rate sufficient to fund existing benefit levels. The Administrator has accepted the contributions without protest, but the union filed unfair labor practice charges over the employers' implementation of the proposal.

designation.

## I. Impasse

The union argues the district court erred by giving the employers' declaration of impasse a presumption of finality rather than waiting for the NLRB to decide whether the declaration was proper. However, the district court expressly refused to decide the impasse issue, explaining that "[i]t is for the NLRB, and not this Court, to decide whether an impasse has, in fact, been reached, whether the Employers continue to have an obligation to contribute to the Pension Plan, and at what level."[1]

## II. Alleged Violations of Fiduciary Duties

### A. Failure to Increase Benefits

■ The union argues the Administrator had a fiduciary duty to increase benefits because the plan was overfunded. The union also contends the Administrator was required by plan documents to increase benefits to maintain the plan's favorable tax status.

■ ERISA imposes on plan administrators a fiduciary duty to act "for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries[ ] and [ ] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Administrators must also act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The duty to act in accordance with plan document does not, however, require a fiduciary to resolve every issue of interpretation in favor of plan beneficiaries. *See O'Neil v.*

*Retirement Plan for Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 61 (2d Cir. 1994). ERISA does not create an exclusive duty to maximize pecuniary benefits. *See Foltz v. U.S. News & World Report, Inc.,* 865 F.2d 364, 373 (D.C.Cir.1989).

The Eighteenth Amendment to the plan confers neither the power nor the obligation upon the Administrator to amend the plan to increase benefits. The language of the plan is permissive, not mandatory: the plan "may be amended ... by the Administrator." Furthermore, the power to amend arises only if amendment is "required" to "obtain[ ] or retain[ ] a favorable determination letter as to the Plan's tax-exempt and qualified status." While overfunding may have prevented certain contributions to the plan from being deducted, there is no evidence the plan was in danger of losing its tax-exempt status.[2]

### B. Reversion of Plan Assets

■ The plaintiffs contend the employers breached their fiduciary obligation not to revert plan assets to themselves.

■ This argument assumes, however, the identity of the Administrator and the employers, and the plaintiffs do not provide evidence sufficient to support an alter ego theory.[3] Moreover, none of the assets currently held by the plan are actually reverting to the employers. Although ERISA does not explicitly define "plan assets," a plain interpretation of the term does not encompass future contributions not yet made. *See Local Union 2134, United Mine Workers of*

---

1. We deny the plaintiffs' motion to supplement the record with complaints issued by the NLRB in February 1996 against two of the employers participating in the pension plan. These documents, which allege wrongdoing on the part of the *employers,* are not relevant because the district court did not find an impasse had been reached and because this suit involves only an alleged fiduciary breach by the Administrator.

2. Other provisions relied upon by the plaintiffs concern the power of the employers and the union jointly to amend the plan, not the Administrator's power to amend.

3. The existence of an alter ego relationship or a conflict of interest is not presumed without proof of specific facts to support these theories. *See, e.g., Cuddington v. Northern Ind. Pub. Serv. Co.,*

33 F.3d 813, 816 (7th Cir.1994) (although ERISA plan administrator consisted of company and committee dominated by officers and employees of company, no automatic conflict of interest arises); *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1191 (4th Cir.1989) (no presumptive bias although administrators serve dual roles as company employees and pension plan fiduciaries and denial of benefits saved money). The suggestion that the Administrator acted as the alter ego of the employers or had a conflict of interest is unsupported by the record. The parties stipulated that "[t]he individual members of the [the Administrator] are not necessarily employed by employers who contribute to the Rock Products Plan." The stipulation also reflects the fact that the Administrator acted as an intermediary between the employers and the union regarding proposed plan amendments.

*America v. Powhatan Fuel, Inc.,* 828 F.2d 710, 714 (11th Cir. 1987) ("until monies were paid by the corporation to the plan there were no assets in the plan under the provisions of ERISA"); *Caudle v. United Mine Workers,* 523 F.Supp. 91 (D.Ala.1981) (assets of ERISA trust are limited to contributions actually held by or delivered to the trustees; they do not include future anticipated contributions).

The plaintiffs rely on *Walling v. Brady,* 917 F.Supp. 313 (D.Del.1996), *rev'd* 125 F.3d 114 (3d Cir.1997), but this case is distinguishable. The trustee in that case was found to have violated ERISA by transferring plan assets from an overfunded pension plan to beneficiaries of a separate, underfunded health and welfare fund. In contrast to the Administrator, the *Walling* trustee improperly disposed of contributions already paid into the fund.

### C. Accepting Contributions at Lowered Rates

The plaintiffs also argue the Administrator breached its contractual and fiduciary obligations by accepting contributions at a rate lower than that specified in plan documents.

#### 1. Contract

■ The plaintiffs claim Section 3.1 of the Plan Document creates a duty not to accept contributions below a specified rate:

The cost of funding Benefits shall be provided by Employer Contributions in accordance with the Basic Labor Agreements; provided, however, that the Plan shall not receive Employer Contributions at less than that rate per Covered Hour which is required at any point in time in the Basic Labor Agreements of at least two-thirds (2/3) of the Employers whose Agreements require Employer Contributions, and which then, in the aggregate, employ at least three-fourths (3/4) of the Employees who are then in Covered Employment.

Because there were no "Basic Labor Agreements" in effect at the time the Administrator accepted the decreased contributions, the district court construed Section 3.1 to permit the Committee "to accept contributions at a

rate that is appropriate under applicable labor-management law." Accordingly, the court held that the Administrator did not violate the provision because labor-management law permits an employer, upon impasse, to implement its last proposal, and in this case the last proposal included the decreased contributions.

The district court correctly interpreted Section 3.1 to impose no responsibility on the Administrator to ensure contributions remained at previous levels after the labor agreements expired.

#### 2. Fiduciary Duty

■ The remaining question is whether the Administrator had a fiduciary duty to demand contributions at the previous levels even after the employers concluded an impasse had been reached.

■ Plan trustees have a general duty to ensure a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries. *See Central States Pension Fund v. Central Transp., Inc.,* 472 U.S. 559, 571, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). A trustee must take action against employers who fail to contribute to a fund as required by a plan, *see Rosen v. Hotel & Restaurant Employees & Bartenders Union,* 637 F.2d 592, 600 (3d Cir.1981), and beneficiaries may sue a fiduciary who fails to collect delinquent contributions, *see McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir.1986).

■ The duty of the pension trustee to collect delinquent contributions continues after expiration of a collective bargaining agreement, at least until impasse is reached. Once a labor agreement expires, an employer has a duty to continue the status quo, including making trust fund payments, until the parties bargain to impasse or reach a new agreement. *See Rozay's Transfer v. Local Freight Drivers,* 850 F.2d 1321, 1332 (9th Cir.1988). The existence of this duty on the part of the employer confers on the trust fund the right to sue to collect contributions during this period. *See id.* While a trust fund cannot bring a collection action under ERISA § 515,[4] *see Laborers Health and*

---

**4.** Section 515 of ERISA creates a collection action against employers for delinquent contributions:

*Welfare Trust Fund v. Advanced Lightweight Concrete,* 484 U.S. 539, 549, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988) it can enforce the employer's duty to continue to contribute by filing an unfair labor practice charge with the NLRB, *see Rozay's Transfer,* 850 F.2d at 1332.

■ The nature of an administrator's fiduciary duty *after* an employer declares impasse is less clear. When an employer believes negotiations have reached an impasse, it may either: (1) seek injunctive relief from further demands for payment; or (2) reduce or stop payments, and raise the impasse issue as a defense should an unfair labor practice claim be filed. *See Producers Dairy Delivery v. Western Conference of Teamsters Pension Trust Fund,* 654 F.2d 625, 628 (9th Cir.1981).

■ Ultimately, the scope of the administrator's duty once an employer has declared impasse must be determined according to the general duties imposed by ERISA: to act with the skill and diligence of a prudent person for the benefit of plan participants and in accordance with plan documents. *See* 29 U.S.C. § 1104(a)(1). Applying that general rule, we hold a plan administrator must make reasonable collection efforts under the circumstances.

The Administrator violated no fiduciary duty by accepting the decreased contributions and doing no more. First, the union itself filed an unfair labor practice claim. Thus, there was no need for the Administrator to file such a claim. The Administrator apparently concluded it should accept the decreased contributions for the time being, with the possibility that additional contributions would be forthcoming should the NLRB rule in favor of the union. Second, the lowered contributions were still sufficient to fund existing benefit levels. While the Administrator could have demanded higher payments, its acceptance of lowered contributions still satisfied a fundamental purpose of ERISA: maintaining the actuarial soundness of pension plans. Finally, a review of the letters exchanged between the employers and the union prior to the declaration of impasse does not suggest the declaration of impasse was unfounded.

The plaintiffs argue the contribution requirements specified in the collective bargaining agreement and plan documents should have applied even after impasse because those documents were the only legally acceptable basis for contributions. The plaintiffs cite *Producers Dairy Delivery,* 654 F.2d 625 (9th Cir.1981), where we held an employer could make postcontract payments to a Taft–Hartley trust fund so long as the payments were in conformity with the expired written agreement and were made during the course of negotiations. As the plaintiffs themselves concede, the pension plan here is not a Taft–Hartley trust because it is not jointly administered by union and employer representatives. The requirement that payments be made in accordance with a written instrument, which underlies the holding of *Producers Dairy,* stems from § 302(c)(5)(B) of the Labor Management Relations Act, which does not apply to the trust at issue in this case. *See* 29 U.S.C. § 186(c)(5)(B) (payments made to jointly administered fund must be based on written agreement).

## III. Attorney's Fees

■ ERISA § 502(g)(1) authorizes a court to grant reasonable attorney's fees and costs to either party. *See* 29 U.S.C. § 1132(g)(1). The defendants seek attorney's fees on the ground that the plaintiffs' arguments are wholly without merit. While the plaintiffs' position was weak, however, its claims were not frivolous or made in bad faith: the scope of a plan administrator's fiduciary duty once an employer declares

---

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. While Congress enacted Section 515 to facilitate the collection of delinquent accounts, the remedy made available under the statute is limited to contractual breaches. *See Advanced Lightweight Concrete,* 484 U.S. at 547, 549, 108 S.Ct. 830. The statute does not confer jurisdiction on courts to determine whether an employer's unilateral decision to refuse to make *postcontract* contributions violates the NLRA. *See id.* at 549, 108 S.Ct. 830.

impasse has not been previously decided, and therefore was open to question. Accordingly, the district court's denial of attorney's fees was not an abuse of discretion. *See Hope v. Int'l Bhd. of Elec. Workers,* 785 F.2d 826, 831 (9th Cir.1986).

AFFIRMED.