47 F.3d 498
 Pens. Plan Guide P 23906C
Philip SISKIND, et al., Plaintiffs-Appellees,
v.
The SPERRY RETIREMENT PROGRAM, UNISYS, formerly known as
Burroughs/Sperry Corporation, the Sperry Corporation
Employee Benefits Executive Committee, as fiduciaries of the
Sperry Retirement Program, and as successors and Unisys
Pension Plan, and its named fiduciaries, Defendants-Appellants.
 No. 336, Docket 94-7120.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 31, 1994.
Decided Feb. 6, 1995.
 
 Francis M. Milone, Philadelphia, PA (Robert J. Lichtenstein, Joseph J. Costello, Morgan, Lewis & Bockius, Philadelphia, PA, Henry Rose, Epstein, Becker & Green, P.C., Washington, DC; Joseph A. Teklits, UNISYS Corporation, Blue Bell, PA, all of counsel), for defendants-appellants.
 Sarah E. Siskind, Madison, WI (Davis, Miner, Barnhill & Galland, P.C., of counsel), for plaintiffs-appellees.
 Before: NEWMAN, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal compels us to revisit an area of ERISA law that involves the fiduciary duties of trustees administering a single employer pension plan. When such trustees hold corporate offices it may appear that they are placed in a position of divided loyalty: they are obliged to act, on the one hand, for the plan's members, so as to secure and make certain that benefits will be available to them and, on the other hand, for the employer, so as to safeguard the business entity's profits. Concededly, trustees have a duty of loyalty to beneficiaries that prohibits them--when their own personal interests clash with those of the beneficiaries--from engaging in self-interested conduct. But the type of private single employer plan before us was established to benefit both employees and the employer, not for the benefit of one only. Thus, it may fairly be said that the trustees have dual--not divided--loyalties. Under the single employer pension plan a trustee's action that benefits the employer will not necessarily have negative consequences for employees. The fund of a defined-benefits pension plan may be likened to a pond that benefits employer and employee alike, reduced in dry periods and increased when the income streams that feed it flow full.
 
 
 2
 Before us is an appeal by defendants Unisys, the Sperry Retirement Program and its fiduciaries and successors from the December 22, 1993 order of the United States District Court for the Southern District of New York (Broderick, J.) that granted summary judgment and injunctive relief to plaintiffs, former employees of the Sperry Corporation. The district court found that by excluding plaintiffs from a selective early retirement incentive program, defendants had breached not only their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA) Sec. 404, 29 U.S.C. Sec. 1104 (1988 & Supp. V 1993), but also the contractual guarantees they had made under the Sperry Retirement Plan documents. The injunction accordingly ordered defendants to make compensatory payments to plaintiffs, and all other employees excluded from the early retirement incentive program, premising relief on ERISA Secs. 502(a)(1)(B) and (a)(3), 29 U.S.C. Secs. 1132(a)(1)(B) and (a)(3) (1988).
 
 
 3
 Early retirement incentive programs--like the one challenged here--have become common in recent years, as corporate employers streamline their workforces and eliminate departments with overlapping missions. Providing early retirement incentives rather than full-scale layoffs is less costly to the employer and also less traumatic to employees facing the loss of their jobs. At the same time, employees considered indispensable by the employer may think it a perverse reward for success to be denied participation in the enhanced benefits granted selected employees in a retirement incentive program.
 
 
 4
 In the instant case the district court found that employees of the Sperry Corporation had been excluded from a selective early retirement program in violation of their pension guarantee of non-discriminatory treatment. It therefore ordered retroactive payments to the excluded employees, effectively eliminating the program's personnel-selecting objective, without which the program would not have been adopted in the first place. In so doing, the trial court overlooked one of Congress' aims in enacting ERISA--that is, to afford employers designing pension plans a degree of flexibility and control.
 
 
 5
 For the reasons that follow, the award of summary judgment to plaintiffs is reversed and this case is remanded to the district court for it to vacate the injunction and grant summary judgment to defendants.
 
 BACKGROUND
 I Facts
 
 6
 The Sperry Retirement Program consists of Part A, a defined benefit pension plan (the Sperry plan), and Part B, a defined contribution plan, not at issue in this litigation. The program was established and maintained pursuant to a written instrument as required by ERISA Sec. 402(a)(1), 29 U.S.C. Sec. 1102(a)(1) (1988). The plan documents designated the Sperry Corporation Employee Benefits Executive Committee (the Committee) as the fiduciary and administrator of the Sperry plan. The plan documents also identified the Committee as the entity with power to amend the plan. Usually in a single employer plan of this type, the employer includes a provision reserving to itself the power to amend the plan, but Sperry failed to include such a provision. Instead, it retained only a power to veto those plan amendments costing over $3 million per year. Article 4.5 of the Sperry plan contains a "uniformity provision" that states:
 
 
 7
 [a]ny discretionary actions taken ... by the Committee with respect to the classification of employees, Members, contributions or benefits shall be uniform in nature and applicable to all persons similarly situated.
 
 
 8
 In September 1986 Sperry merged with Burroughs Corporation to form a new entity now known as Unisys. Unisys determined to divest itself of some overlapping corporate divisions and cut back its workforce in others. To further these goals Unisys management developed a proposed amendment to the Sperry plan, known as the Special Voluntary Retirement Program (Special Retirement Program or Program). The Program was to be funded from the Sperry plan's existing surplus of $362 million, and would offer selected Sperry employees incentives for early retirement. Employees in divisions whose workforce Unisys sought to retain for business reasons--in general, those divisions slated for divestment--were to be excluded from the Special Retirement Program.
 
 
 9
 Unisys management submitted the proposed Program to the Committee on October 7, 1986, together with a list of those business units to be included in the Program. The Committee made no express declaration that employees in excluded divisions were not "similarly situated" to participating employees within the meaning of Article 4.5 of the Sperry plan. It simply adopted the plan amendment as proposed, along with the list of participating divisions.
 
 
 10
 The proposed list excluded, among others, the Flight Simulations Systems Division in Reston, Virginia, the Microwave and Support Systems Division in Clearwater, Florida, and the Surveillance and Fire Control Division in Great Neck, New York, the locations where plaintiffs were employed. On November 5, 1986 Unisys extended a modified version of the Program (the "60/30" plan) to employees of the Surveillance and Fire Control Division who were at least 60 years of age and had at least 30 years of credited service. By contrast, employees in other included divisions qualified for the Special Retirement Program's benefits at age 55 and with only 15 years of credited service (the "55/15" plan). In excluded divisions, where Unisys desired to maintain personnel, no employees were offered Program benefits. Which employees to offer these benefits, and which to exclude, were decisions made solely to advance the business goals of Unisys.
 
 II Prior Proceedings
 
 11
 Plaintiffs are 41 former Sperry employees who were denied the enhanced retirement benefits package either because they worked at divisions Unisys excluded from the Program or at a division where Unisys offered the Program only in its restricted "60/30" version.
 
 
 12
 Plaintiffs brought suit on November 21, 1986 against the Sperry plan and its fiduciaries and successors, seeking declaratory and injunctive relief for violations of the fiduciary provisions of ERISA Secs. 404 and 409, 29 U.S.C. Secs. 1104, 1109 (1988). They alleged that defendants had breached their duty to act for the sole benefit of Sperry plan participants and beneficiaries in accordance with the Sperry plan's governing documents. When defendants moved to dismiss the complaint, plaintiffs moved for summary judgment. On October 26, 1987 the district court denied both parties' motions and ordered them to supplement the record. Upon completion of discovery, the parties filed cross-motions for summary judgment.
 
 
 13
 On April 13, 1992 the district court granted plaintiffs summary judgment. It held that the Committee, as the sole entity with authority to amend the Sperry plan, had wrongfully delegated to Unisys management the power to determine eligibility for benefits, and thereby breached its fiduciary duty under Sec. 404. It also held that the creation of a discriminatory incentives plan violated the provision in Article 4.5 of the Sperry plan requiring the Committee's administrative actions to be "uniform in nature and applicable to all persons similarly situated." As a result, the trial court concluded that the Committee, in violation of ERISA Sec. 402(b)(3), had failed to adhere to the requirements and procedures of the Sperry plan documents.
 
 
 14
 On June 22, 1992 the district court issued an order in which it characterized its April 13, 1992 order as finding all defendants in violation of ERISA Secs. 102, 104, 402, and 404. 29 U.S.C. Secs. 1022, 1024, 1102 and 1104 (1988 & Supp. V 1983). The court ruled that relief was available to the plaintiffs under ERISA Sec. 502, although plaintiffs' complaint had not raised that section as a basis for relief. On September 3, 1992 plaintiffs moved to amend their complaint to (1) add as defendants the Unisys pension plan and its named fiduciary as successors to the Sperry plan and the Committee, (2) remove one plaintiff and add another, and (3) add claims against all defendants under ERISA Secs. 502(a)(1)(B) and 502(a)(3), the sections under which the district court had held that relief was available. In a September 28, 1993 order the district court granted plaintiffs' motion to amend the complaint, purportedly in order to reflect the issues actually litigated.
 
 
 15
 On December 22, 1993 the district court issued a final declaratory and injunctive order, which incorporated its April 13, 1992 order, finding breaches of the Committee's fiduciary duty and of Article 4.5 of the Sperry plan. The injunction ordered Unisys to make payments either directly to employees ineligible for the Special Retirement Program or to the Unisys Pension Plan for distribution to those employees. The precise amount of payments was left open, and the trial court retained jurisdiction over the matter to enforce its order.
 
 
 16
 Relief was structured in terms of contract reformation; that is, the trial court stated that the "uniformity provision" of the Sperry plan "modifies the Special Retirement Program to the extent necessary to fulfill its own commands." In essence, this approach conceded the validity of the Program amendment, but required it to be applied equally to all employees--regardless of corporate division--finding that the contract term "similarly situated" did not permit distinctions based on personnel decisions. The district court further found plaintiffs entitled to recover those benefits guaranteed them by the contractual terms of the Sperry plan document, on the basis of ERISA Secs. 502(a)(1)(B) and (a)(3).
 
 
 17
 Although no class certification was requested or made, these payments were ordered on behalf of all excluded employees, not just the plaintiffs represented. By defendants' estimate, this expanded basis of relief increased Unisys' potential liability from a judgment of $650,000 due 41 plaintiffs into a possible $35-$55 million award to be paid out to over 1,600 persons. It is from this final judgment of December 22, 1993 that defendants appeal.
 
 DISCUSSION
 
 18
 As a preliminary matter we touch briefly on the scope of our review respecting the relief granted by the trial court. We review the grant of summary judgment de novo, examining the record most favorably to the non-moving party. See Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir.1993). When there are no genuine issues of material fact in dispute our task is to determine whether the district court correctly applied the law. See Luyando v. Grinker, 8 F.3d 948, 950 (2d Cir.1993). Review of the injunctive relief granted depends upon the validity of the conclusions of law underlying the district court's April 13, 1992 summary judgment order, upon which the injunction was premised. The district court's award of injunctive relief may be reversed only when we conclude such relief was a clear error of law or an abuse of the trial court's discretion. See Malarkey v. Texaco, Inc., 983 F.2d 1204, 1214 (2d Cir.1993). In reviewing the propriety of issuing an injunction, such abuse of discretion may exist when "the district court has applied incorrect legal standards." Coca-Cola v. Tropicana Products, Inc., 690 F.2d 312, 315 (2d Cir.1982). Discussion now turns to the merits.
 
 I The Uniformity Provision
 A. Sole Basis of Relief
 
 19
 The contractual claim forms the sole basis for the district court's order of injunctive relief. It was on this theory that the court ruled that monetary relief could be obtained using the enforcement provisions of ERISA Secs. 502(a)(1)(B) and (a)(3). The first of these, Sec. 502(a)(1)(B), allows "a participant or beneficiary ... to recover benefits due him under the terms of his plan." Section 502(a)(3) allows a court to order "other appropriate equitable relief." The district court used this section as authority for ordering defendants to provide all excluded employees, not just plaintiffs, "equal access" to the Special Retirement Program.
 
 
 20
 By this means, the district court's injunction extended the monetary award beyond the plaintiffs to the entire class of excluded employees, absent Rule 23 class certification, see Fed.R.Civ.P. 23, although the claims of many, if not most, of this large number of employees would be time-barred under the six-year statute of limitations set forth in ERISA Sec. 413, 29 U.S.C. Sec. 1113 (1988 & Supp. V 1993). A court is required of course to rule on class status "as soon as practicable after the commencement of an action...." Fed.R.Civ.P. 23(c)(1). The reason for this rule is plain: fundamental fairness requires that a defendant named in a suit be told promptly the number of parties to whom it may ultimately be liable for money damages. See McCarthy v. Kleindienst, 741 F.2d 1406, 1412 (D.C.Cir.1984); cf. Sterling v. Environmental Control Bd., 793 F.2d 52, 58 (2d Cir.) (trial judge had discretion to deny motion for class certification made three and one-half years after lawsuit commenced and full trial completed), cert. denied, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); see generally 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Sec. 1785, at 98-102 (1986) ("The better general rule is that a court cannot simply award class relief after adjudicating an individual claim.").
 
 
 21
 Defendants have attacked this aspect of the injunction by appealing from the order granting plaintiffs permission belatedly to amend their complaint to add claims under ERISA's civil enforcement provisions. We do not need to reach this issue, because we conclude, as discussed below, that plaintiffs' underlying contractual claims are without merit. Yet, we think the due process concerns raised by awarding judgment to an uncertified class are too serious to pass over without comment. Even though the structure of injunctive relief lies within the sound discretion of the trial judge, that discretion must not be exercised at the cost of fairness to all parties. That being said, we now turn to a consideration of plaintiffs' contractual claims to relief.
 
 
 22
 B. "Similarly Situated"
 
 
 23
 Plaintiffs contend the "uniformity provision" of the Sperry plan requires that the Program apply equally "to all persons similarly situated." It is undisputed that excluded employees were "similarly situated" to employees included in the Program, except with respect to Unisys' business needs. Hence, the issue we must address is whether the plan's uniformity provision permits discrimination among employees on the sole basis of the plan sponsor's business needs. We are of the view that the term "similarly situated" unambiguously refers to matters broader than age and seniority, and includes--i.e., permits distinctions based on--such subjects as business circumstances and job security.
 
 
 24
 Plaintiffs contend that an employer's business circumstances may not be considered in amending a plan because ERISA requires plan fiduciaries to act "with single-minded devotion to a plan's participants and beneficiaries...." Morse v. Stanley, 732 F.2d 1139, 1145 (2d Cir.1984). In Morse we held that three key employees who went to work for a competitor could be denied accelerated lump sum payments from the firm's profit sharing plan. The employer funded the plan and, in that capacity, was a participant in it. The trustee's decision was in the interest of the employees and the employer in protecting the firm's profitability. Id. at 1146. ERISA plan trustees are not prohibited from acting in a way that incidentally benefits the employer. See Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); see also Murphy v. International Business Machines Corp., 23 F.3d 719, 720-21 (2d Cir.) (per curiam) (upholding denial of exit-incentive benefits to an employee considered a "critical resource" where plan gave administrator discretionary authority to determine eligibility based on management's business needs), cert. denied, --- U.S. ----, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994).
 
 
 25
 Morse deals with the administrative denial of benefits rather than a structural plan amendment. Nevertheless, the case is instructive in determining what considerations are permissible for an employer in discriminating among plan beneficiaries. In Morse benefits were denied to key company employees in part on the grounds that business profitability was ultimately in the interest of the participants of a profit sharing plan. This rationale applies to the case at hand: strategic workforce reductions undertaken by Unisys were made in the interest of the corporation's long-term viability, and in that respect were not antithetical to the interests of plan members. In this context, maximizing the profits of a business is a permissible consideration in the administration of a single employer pension plan.
 
 
 26
 Nor do we think that excluded and included employees were in fact so "similarly situated" that Sperry plan fiduciaries were not permitted to make distinctions between them. Those employees to whom Unisys offered the enhanced benefits of the Special Retirement Program were the ones Unisys wished to eliminate from the workforce and were thus more vulnerable to layoffs than the excluded employees. It was reasonable for the plan fiduciary to approve an amendment that would provide increased benefits to those employees whose jobs were at greater risk of elimination. We agree with those courts that have held "[e]mployees at overstaffed plants and employees at 'lean' plants are not similarly situated." Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3d Cir.1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988); see also Crosswhite v. E.I. DuPont de Nemours and Co., 896 F.2d 1366 (4th Cir.1990) (unreported decision) ("employees at commercial plants and those at government contract facilities ... are not similarly situated").
 
 
 27
 Consequently, we believe it was inappropriate to grant summary judgment to plaintiffs on this issue. Defendants' interpretation of the plan language is, as a matter of law, the correct one. The Sperry plan did not contain any contractual guarantees that would invalidate the selective offering of early retirement incentives made under the Special Retirement Program.
 
 II Breach of Fiduciary Duty
 
 28
 While exclusions from the Program were initially proposed by the Unisys board of directors, they were adopted by the Committee pursuant to the procedures set forth in the Sperry plan's governing documents. Nevertheless, the district court found that such adoption violated the plan because it believed, in essence, the Committee "abandoned its duty to structure the plan through its own amending processes and delegated to management the power to determine eligibility for benefits." In other words, the Committee had a fiduciary duty to design, as well as to approve, amendments to the Sperry plan. The Committee breached this duty, according to the district court, by passively adopting management's plan design.
 
 
 29
 An employer that designs a retirement plan or amends an existing plan's design does not come within ERISA's definition of a fiduciary. See Belade v. ITT Corp., 909 F.2d 736, 737-38 (2d Cir.1990) (per curiam). An employer acts as a fiduciary within the meaning of ERISA Sec. 3(21)(A), 29 U.S.C. Sec. 1002(21)(A) (1988), only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration. Virtually every circuit has agreed that because these defined functions do not include plan design, an employer may decide to amend an employee benefit plan without being subject to fiduciary review. See Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524-25 & n. 33 (5th Cir.1994); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1161 (3d Cir.1990) (collecting cases).
 
 
 30
 The exemption of an employer's plan design decisions from fiduciary review is a necessary part of ERISA's legislative balance. One of Congress' purposes in adopting ERISA was to further the formation of retirement benefit plans. See H.R.Rep. No. 533, 93d Cong., 2nd Sess. 1, reprinted in 1974 U.S.C.C.A.N. 4639, 4639 ("The primary purpose of the bill is the protection of individual pension rights, but the committee has been constrained to recognize the voluntary nature of private retirement plans.") Had ERISA subjected employer's amendments to stringent review, employers would have been less willing to create retirement plans. See Hozier, 908 F.2d at 1160-61 (defining amendment decisions as fiduciary would "sweep[ ] away by indirection the limitations so meticulously built into" ERISA's statutory scheme). Since defined-benefit plans create claims against both the assets in the pension trust and an employer's assets in general, an employer must have latitude in the sound management of its business to determine the benefits it will guarantee. See Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1188 (7th Cir.1994).
 
 
 31
 Despite these important concerns, plaintiffs seek to distinguish the present case from Belade and other cases permitting plan amendments in furtherance of an employer's business purposes, on the ground that the Sperry plan failed to provide language expressly reserving to Sperry the right to amend the plan. As a result of Sperry's failure to reserve this power in the plan's governing document, plaintiffs argue, the power to enact the Special Retirement Program amendment lay exclusively with the Committee, as distinct from the employer. As a result of this exclusive fiduciary status, plaintiffs continue, the Committee could not "wear two hats" and assume the role of employer for purposes of amending the plan. Therefore, plaintiffs conclude, the Committee, as named fiduciary, was under a duty imposed by ERISA Sec. 404(a) to act in the sole interest of plan beneficiaries without consulting the interests of Unisys.
 
 
 32
 Single employer pension plans like the Sperry plan typically contain a clause expressly reserving amendment authority to the employer. See Stephen R. Bruce, Pension Claims: Rights and Obligations 435 (1988). Plaintiffs' contention is that the omission of such a "boilerplate" clause puts the Sperry plan into the category of collectively-bargained multiemployer plans, where amendment authority typically rests exclusively with the plan fiduciaries. In the multiemployer plan context, courts have treated plan amendments as fiduciary functions, invalidating amendments not made in furtherance of the participants' and beneficiaries' interests. See Chambless v. Masters, Mates & Pilots Pension Plan, 772 F.2d 1032, 1040 (2d Cir.1985) (amendment which reduced retiree's benefits arbitrary and capricious because not in interests of plan participants and beneficiaries), cert. denied, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986); Agro v. Joint Plumbing Indus. Bd., 623 F.2d 207, 210 (2d Cir.1980) (safeguarding assets of fund inadequate justification for trustees' application of pension fund amendment to strip employee of work credits without notice). But cf. Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund, 27 F.3d 211, 213 (6th Cir.1994) (multiemployer plan trustees not subject to fiduciary review for amending plan to protect its financial stability).
 
 
 33
 Plaintiffs correctly observe that the policy of ERISA requires strict attention to the actual language of the plan's governing documents. ERISA's requirement that the procedures for amending a pension plan be specified in such documents, contained in ERISA Sec. 402(b)(3), serves the important policy of providing plan beneficiaries with certainty and security regarding their benefits. See Schoonejongen v. Curtiss-Wright Corp., 18 F.3d 1034, 1040 (3d Cir.1994) (adherence to plan documents "provides certainty and protects plan participants against frustration of their legitimate expectations"), petition for cert. granted, --- U.S. ----, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); cf. Birmingham v. SoGen-Swiss Int'l Corp. Retirement Plan, 718 F.2d 515, 522 (2d Cir.1983) (reservation of power to oversee plan administration "must be done explicitly and with precision"). In addition, ERISA is informed by the general law of trusts, Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 110-11, 109 S.Ct. 948, 954-55, 103 L.Ed.2d 80 (1989), and it is a basic principle of trust law that a settlor retains power to amend a trust only to the extent that it expressly retains that power in the settling document. See Restatement (Second) of Trusts Sec. 331; IV Austin W. Scott and William F. Fratcher, The Law of Trusts Sec. 329A (4th ed. 1989).
 
 
 34
 Hence, the Sperry plan could only be amended in accordance with the provisions of the Sperry plan's governing document, that is to say, by the Committee's adoption of an amendment. Yet, we are unpersuaded that amendment of the Sperry plan was a fiduciary act. The cases holding plan amendment to be an administrative and fiduciary task concern multiemployer pension plans, jointly administered by trustees representing the employers and trustees appointed by and representing the union. See, e.g., Chambless, 772 F.2d at 1035. In the multiemployer setting, trustees amending a pension plan "affect the allocation of a finite plan asset pool" to which each participating employer has contributed. Musto v. American General Corp., 861 F.2d 897, 912 (6th Cir.1988), cert. denied, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989). For that reason trustees administering a multiemployer plan are expected to act solely for the benefit of beneficiaries and are barred from acting on the employers' behalf.
 
 
 35
 The Sperry plan, in contrast, is a single employer plan, funded entirely by Sperry, now Unisys, and administered by the Committee, which consists solely of corporate officers. In the single employer setting, where plan trustees are also corporate officers, their actions must be made in the interest of both the plan's participants and the employer. This is not so odd when it is recognized that the employer benefits when the plan does well and is liable for any shortfall when the plan's investments do poorly. Where the employer is viewed as a participant in the single employer plan, it shares with its employees an interest in having the pension plan contribute to business profitability along with its principal task of ensuring future benefits to employees; such a view permits maximizing the interests of both employer and employee. This dual responsibility is expressly envisioned under ERISA Sec. 408(c)(3), which permits a plan sponsor to appoint as trustee its own "officer, employee, agent or other representative." 29 U.S.C. Sec. 1108(c)(3) (1988). Section 408(c)(3) in the single employer context contrasts with the sole benefit rule of Sec. 404(a)(1)(A), as the former section "expressly contemplates fiduciaries with dual loyalties." Donovan v. Bierwirth, 538 F.Supp. 463, 468 (E.D.N.Y.1981), aff'd as modified, 680 F.2d 263 (2d Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); see Daniel Fischel & John H. Langbein, ERISA's Fundamental Contradiction: The Exclusive Benefit Rule, 55 U.Chi.L.Rev. 1105, 1126 (1988). Thus, the plan fiduciaries have duties to the corporation as well as duties to plaintiffs as beneficiaries.
 
 
 36
 Further, the trustees of a single employer pension plan may conduct business on behalf of the employer in their capacities as corporate officers, and to the extent that such business is not regulated by ERISA, they may act without invoking their fiduciary duties to plan beneficiaries. For purposes of enacting an amendment regarding plan design, the plan trustees stand in the shoes of the employer. See Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480, 1488 (10th Cir.1994) (plan trustee's adoption of amendment proposed by employer "was done in the committee's capacity as 'drafter,' [and so] was not subject to ERISA's fiduciary standards"). As Unisys had the right to decide to exclude certain employees from the design of an enhanced-benefits retirement plan, the Committee had a duty as corporate officers to adopt Unisys' proposal, if it was not otherwise inconsistent with the "complete loyalty to participants demanded of them as trustees of a pension plan." Donovan, 680 F.2d at 271.
 
 
 37
 Given these considerations, the absence of an expressly retained power of amendment does not transform the Sperry plan into one governed by the fiduciary rules that obtain in the multiemployer setting. The Sixth Circuit faced a similar question and, in addressing the issue of an employer's failure to expressly reserve amendment power over a benefit plan, reached the same conclusion as we do here. See Adams v. Avondale Indus., Inc., 905 F.2d 943, 949 (6th Cir.), cert. denied, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). Plainly the policy of protecting employee expectations is counterbalanced by Congress' effort to provide flexibility for employers establishing pension plans, absent any detrimental reliance by employees based on the trustee's failure to comply with a plan's amendment procedures.
 
 
 38
 No detrimental reliance based on the amendment to the Sperry plan has been alleged in the instant case. The trial court's finding that plaintiffs suffered a "loss of opportunity" relegates reason and proof to the wings, while pleadings and empty allegations occupy the center of the stage. Though called a "finding," it is really a conclusion of law, and one that we conclude is erroneous. Those employees excluded from the Program suffered no reduction in the non-Program benefits to which they were entitled. Nor did they lose any real interest in the pension fund surplus. Employees have no property right to the funding surplus of a defined-benefits pension plan, which the employer may use at its discretion, whether to create additional benefits, or to offset decreased fund contributions from business assets. There was testimony that Unisys would not have approved an across-the-board increase in benefits to all employees irrespective of personnel considerations, and the board of directors had the power under Article 5.1 of the plan to veto such an amendment had the Committee adopted it.
 
 
 39
 Nor is this a situation where clear, timely explanations were necessary to allow employees to avoid loss of benefits. See Chambless, 772 F.2d at 1040. There is simply no support in the record for the assertion that a more adequate compliance with the notice provision of Sec. 402 on the part of defendants would have in any way altered plaintiffs' position. The adoption of the Special Retirement Program amendment was a valid exercise of Unisys' power to control the benefits plan design. As a consequence, it was error to rule that adoption of the amendment constituted a breach of defendants' fiduciary duties under ERISA Sec. 404.
 
 CONCLUSION
 
 40
 Accordingly, the grant of summary judgment to plaintiffs is reversed and the case is remanded to the district court for it to vacate its injunction and grant summary judgment on behalf of defendants Unisys, the Sperry Retirement Program, and its named fiduciaries and successors, dismissing plaintiffs' complaint in accordance with this opinion.