

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-1997

# Walling v. Brady

Precedential or Non-Precedential:

Docket 96-7526

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Walling v. Brady" (1997). *1997 Decisions.* Paper 179.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7526

JOSEPH R. WALLING, and other
individuals similarly situated

v.

EDWARD J. BRADY; HAROLD R. BROHAWN;
JOHN D. DANIELLO; WILLIAM R. HICKMAN;
TERRANCE M. SHANNON; JOHN W. STEWART;
JAMES R. WAHL; ALFRED C. WILSON, JR.,
as Trustees of the Plumbers and Pipe
Fitters Local Union No. 74 Pension Fund;
PLUMBERS AND PIPE FITTERS LOCAL UNION NO. 74
PENSION FUND,

Appellants

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 94-cv-00410)

Argued June 16, 1997

BEFORE: COWEN, ALITO and SEITZ, <u>Circuit Judges</u>

(Filed July 30, 1997)

Richard L. Abbott, Esq. (argued)
Theisen, Lank, Mulford & Goldberg
P.O. Box 1470
1201 Orange Street
One Commerce Center, Ninth Floor
Wilmington, DE 19899

 COUNSEL FOR APPELLEE

Joseph R. Walling, and other
individuals similarly situated

Kent Cprek, Esq. (argued)
Richard B. Sigmond, Esq.
Sagot, Jennings & Sigmond
510 Walnut Street
The Penn Mutual Towers, 16th Floor
Philadelphia, PA 19106-3683

 COUNSEL FOR APPELLANTS

Edward J. Brady
Harold R. Brohawn
John D. Daniello
William R. Hickman
Terrance M. Shannon
John W. Stewart
James R. Wahl
Alfred C. Wilson, Jr., as Trustees
of the Plumbers And Pipe Fitters
Local Union No. 74 Pension Fund

Plumbers and Pipe Fitters Local
Union No. 74 Pension Fund

Susan K. Hoffman, Esq.
Pepper, Hamilton & Scheetz
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA 19103-2799

COUNSEL FOR
AMICUS-APPELLEES

Local Union No. 626, United
Brotherhood of Carpenters &
Joiners of America Pension Fund,
as Plan Sponsor of Carpenters
Local No. 626 Pension & Annuity
Plan

Teamsters Pension Trust Fund of
Philadelphia and Vicinity

Teamsters Health and Welfare
Fund of Philadelphia and Vicinity

Carpenters Pension and Annuity
Fund of Philadelphia and Vicinity

Carpenters Health and Welfare
Fund of Philadelphia and Vicinity

Steamfitters Local Union No. 420
Pension Fund

Steamfitters Local Union No. 420
Welfare Fund

**OPINION OF THE COURT**

COWEN, <u>Circuit Judge</u>.

Appellants appeal from the February 9, 1996, order of the district court granting summary judgment to plaintiff-appellee Joseph R. Walling and a class of persons he represents, and denying appellants' cross motion for summary judgment. <u>Walling v. Brady</u>, 917 F. Supp. 313 (D. Del. 1996). The district court held that the Board of Trustees ("Trustees") of an ERISA-qualified multi-employer

pension fund had abused its discretion when it amended its pension plan to authorize the payment of an additional $100 per month to only 85% of the fund participants rather than the full membership. We will reverse.

I.

The Plumbers and Pipefitters Local Union No. 74 Pension Fund ("Pension Fund") and the Trustees were sued by a class of 54 participants in the Pension Fund, with Walling appointed as the designated class representative. The plaintiffs asserted that the Trustees unlawfully diverted pension funds in violation of 29 U.S.C.A. § 1103(c)(1) (1985 and Supp. 1997) and breached their fiduciary duty under 29 U.S.C.A. § 1104. The eight individuals serving as trustees of the Pension Fund (four are appointed from the union, four from management) are the same eight people who serve as the trustees of the Plumbers and Pipefitters Local Union No. 74 Welfare Fund ("Welfare Fund"). The management representatives to the boards of trustees are appointed by the Delaware Mechanical Contractors' Association, Inc., which represents the multiple employers who support the Pension Fund and the Welfare Fund.

The Pension Fund is a defined-benefit plan. It does not have a "finite asset pool" and is able to incur unfunded liabilities. The employers and the Pension Fund jointly share liability for the fund's obligations. The provisions of the Pension Fund give the Trustees, collectively as plan administrator, wide latitude to

[d]ecide all questions relating to the interpretation of the Trust Agreement and Plan. The exercise of discretion or determination of questions arising in the administration, interpretation and application of the Trust Agreement or Plan shall be final and binding except as otherwise provided by law.

App. at 349-50. The plan administrator also may "[a]mend, alter or otherwise change the Pension Plan in any way not inconsistent with applicable laws or regulations of government agencies or the provisions of this Trust." Id. at 350.

4

An actuarial consultant retained by the Trustees reported that successful investments had caused the Pension Fund to have a surplus. The Trustees were aware that the Welfare Fund was simultaneously faced with increased health care costs and that the Trustees had already decided, in their capacity as the Welfare Fund board of trustees, to impose a requirement that all Welfare Fund participants pay a $100 per month fee for their coverage, which previously had not required such a fee. The Trustees chose to address the imbalance between the funds by paying an additional $100 per month in benefits to those members of the Pension Fund who, by virtue of also being members of the Welfare Fund, would now have to pay $100 each month to the Welfare Fund: "The Trustees openly concede that the motivation behind this additional $100 per month Pension Fund benefit was to maintain the purchasing power of those retired Welfare Fund individuals who now shouldered an additional $100 monthly burden, presumably on a fixed income." Walling, 917 F. Supp. at 317. The Trustees also noted that the Pension Fund did not reduce the benefits for Walling or any member of his class; indeed, all Pension Fund participants received a separate 5% increase in benefits. The Walling class members, as well as all the other members of the Pension Fund, have received more than they had anticipated receiving from the Pension Fund upon retirement. The class members consist of Pension Fund members who do not also participate in the Welfare Fund; they retired without fulfilling sufficient years of service to qualify for Welfare Fund benefits.

Walling and his class asserted that the surplus should have either been retained by the Pension Fund or distributed equally to all participants. They note that all Pension Fund members were faced with rising health care costs, regardless of whether they were Welfare Fund participants, and claimed that the payment of an additional, monthly $100 to only the 85% of Pension Fund members who are also Welfare Fund members was not a valid "Pension Fund interest." Id. at 322.

The district court agreed with Walling. It held that appellants violated their fiduciary duty of loyalty in amending the plan to provide the supplemental $100

5

benefit. In so holding, the district court determined that appellants violated their duty of loyalty, whether that duty is reviewed under the strict " `prudent' person standard" or the more relaxed "arbitrary and capricious" standard. Id. at 321. We will reverse. We hold that no fiduciary duty applies, and that the Trustees acted within their powers as settlors in amending the Pension Fund plan.

II.

Subject matter jurisdiction over this matter was exercised by the district court pursuant to 29 U.S.C.A. § 1132, as an action to clarify benefits and enforce rights under the Employee Retirement Income Security Act ("ERISA"). We have appellate jurisdiction under 28 U.S.C.A. § 1291 (1984). This court exercises plenary review over the district court's grant of summary judgment. We will affirm summary judgment "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Smith v. Hartford Ins. Group, 6 F.3d 131, 135 (3d Cir. 1993).

III.

A.

The district court concluded that the fiduciary duty (set forth in 29 U.S.C.A. § 1104) applied to the Trustees' amendment to the Pension Fund plan, which provided for the additional $100 per month payment. It determined that the Trustees had failed to act with the duty and loyalty required of a fiduciary. In the view of the district court, under either the "prudent person" or the "arbitrary and capricious" standard of review, the Trustees' actions were improper. The court based its decision largely on a perceived difference between multi- and single-employer plans, citing dicta in Siskind v. Sperry Retirement Program, Unisys, 47 F.3d 498, 506 (2d Cir. 1995). Siskind states that multi-employer plans differ from single-employer plans on the issue of fiduciary obligations. As the Second Circuit explained:

6

The cases holding plan amendment to be an administrative and fiduciary task concern multiemployer pension plans, jointly administered by trustees representing the employers and trustees appointed by and representing the union. In the multiemployer setting, trustees amending a pension plan affect the allocation of a finite plan asset pool . . . . For that reason trustees administering a multiemployer plan are expected to act solely for the benefit of beneficiaries and are barred from acting on the employers' behalf.

Id. (emphasis added)(citations and internal quotations omitted). In contrast, the employer sponsoring a single-employer plan, "must have latitude in the sound management of its business to determine the benefits it will guarantee." Id. at 505 (citing Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1188 (7th Cir. 1994)). The court then held, "to the extent [the trustees' actions are] not regulated by ERISA, they may act without invoking their fiduciary duties to plan beneficiaries." Id. at 507.

B.

Arguments are advanced by both parties concerning whether the Siskind approach (analyzing single- and multi-employer cases differently) has been made obsolete by the Supreme Court's recent decision in Lockheed Corp. v. Spink, ____ U.S. ____, 116 S.Ct. 1783 (1996), which was filed after the district court entered the appealed-from order. In Lockheed, the Supreme Court explained that:

Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans . . . "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust.

___ U.S. at ___, 116 S.Ct. at 1789 (citations omitted)(alteration in original). The Court made clear that

7

this reasoning applied to both "pension benefit plans" and "welfare benefit plans." Id. at 1789-90.

Lockheed speaks of "plan sponsors," a term that applies to both single-employer sponsors and multi-employer sponsors under ERISA, and the opinion lacks any hint that single- and multi-employer plans should be analyzed differently. At the same time, the silence of Lockheed on this topic could arguably be a result of its subject matter, a single-employer plan. The Court did not mention multi-employer plans nor state that its decision was intended to reach them or to address their particular characteristics.

While we do not read Lockheed to be the definitive word that there are never valid occasions on which to distinguish between the two types of plans, we find that the instant case is clearly one in which the fiduciary duty does not apply. Lockheed states in simple language that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." Id. at 1789. The plan feature (a finite asset pool) on which Siskind based its deviation from this bright-line rule is not present here.

In discussing the distinction between single- and multi-employer plans, Siskind drew heavily on the Sixth Circuit's opinion in Musto v. American General Corp., 861 F.2d 897, 912 (6th Cir. 1988). Musto placed importance on the fact that a multi-employer plan involves a finite asset pool. However, before Siskind was decided, the Sixth Circuit issued Pope v. Central States Southeast & Southwest Areas Health and Welfare Fund, 27 F.3d 211 (6th Cir. 1994). Pope did not place emphasis on the "finite asset pool distinction" and found no reason to treat multi-employer and single-employer plans differently when the sponsor of either is merely amending its plan:

[A]mendment of multi-employer plans does not [materially] differ from amendment of single-employer plans. . . . A company "normally acts in its role as employer, not in its role as fiduciary" when amending a single-employer plan. Musto, 861 F.2d at 912. Imposition of fiduciary obligations in favor of plan participants and beneficiaries would thus divide the company's loyalties, a result ERISA was designed to

8

prevent. The trustees of a multi-employer plan do not act in the role of employers when enacting plan amendments which simply affect the allocation of an asset pool among participants and beneficiaries. See Musto, 861 F.2d at 912. However, multi-employer plan trustees assume a position analogous to that of a single-employer plan administrator when they amend a plan to protect its financial stability. As in cases involving single-employer plans, the policy encouraging employers to establish welfare benefit plans is served by permitting trustees of multi-employer plans to amend such plans without fiduciary considerations. Furthermore, and again like cases involving single-employer plans, imposition of fiduciary obligations in cases involving multi-employer plans would divide the trustees' loyalties and might keep them from pressing for generous welfare plan benefits.

Pope, 27 F.3d at 213-14 (citations omitted).

As noted above, the Pension Fund is a multi-employer plan that does not have a "finite asset pool," yet the presence of such a pool is the sole reason Siskind articulated for distinguishing between single- and multi-employer plans. Pope stands for the proposition that the Sixth Circuit, despite its authorship of Musto, is prepared to treat single- and multi-employer plans similarly in the absence of some other salient difference. In the instant case, the employers and the Pension Fund jointly share liability for the fund's obligations. The rationale for having the fiduciary duty of loyalty apply is therefore absent, because the Trustees have the power to incur unfunded liabilities, as with any settlor or grantor in a single-employer trust. All employers in a multi-employer plan are collectively a single employer in the language of 29 U.S.C.A. § 1060 (explaining that other ERISA sections should "be applied as if all employees of each of the employers were employed by a single employer"). Section 1002(16)(B) of ERISA uses the term "plan sponsor" rather than "employer," indicating that the term "sponsor" is meant to encompass more than single employers:

The term "plan sponsor" means (I) the employer in the case of an employee benefit plan established or

9

maintained by a single employer . . . or (iii) in the case
of a plan established or maintained by two or more
employers or jointly by one or more employers and one
or more employee organizations, the association,
committee, joint board of trustees, or other similar
group of representatives of the parties who establish or
maintain the plan.

Id.

The distinction embraced in dicta by Siskind, and relied
upon by the district court, was due to its finding a material
difference in the administration of single- and multi-
employer plans. Finding no such difference here, we hold
that the simple fact that the plan at issue is a multi-
employer plan is insufficient to cause the fiduciary duty to
attach to the Trustees' actions.

C.

The principal reason that the fiduciary duty typically
attaches to the actions of plan trustees--that their action is
administrative or discretionary in character--is absent
here. ERISA draws a distinction between employers
modifying their plans ("plan modifiers") on the one hand,
and fiduciaries exercising the discretion vested in them as
plan administrators, on the other. The single-/multi-
employer distinction described in the foregoing paragraphs
is a byproduct of this more central distinction. Musto noted
the interconnectedness of these two sets of distinctions:

In amending a multi-employer plan, where the level of
contributions of each participating employer has
generally been set by collective bargaining, the trustees
"affect the allocation of a finite plan asset pool between
participants," as defendants point out in their brief,
and hence act as plan administrators subject to a
fiduciary duty. But when, as here, there is only one
employer, there is normally no "plan asset pool" to be
affected. In amending a single employer plan, therefore,
the company normally acts in its role as employer, not
in its role as fiduciary.

861 F.2d at 912.

10

In the instant case, the district court properly placed emphasis on the fiduciary-administrator/employer-plan modifier dichotomy. "[W]hen employers wear `two hats' as employers and administrators, `they assume fiduciary status "only when and to the extent" that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA.' " Walling, 917 F. Supp. at 319 (first alteration in original)(quoting Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 234 n.10 (3d Cir. 1994)(quoting Payonk v. HMW Indus., Inc., 883 F.2d 221, 225 (3d Cir. 1989)(citations omitted)). As to the meaning of "business . . . not regulated by ERISA," id., we stated in Nazay v. Miller, "ERISA's concern is with the administration of benefit plans and not with the precise design of the plan." 949 F.2d 1323, 1329 (3d Cir. 1991)(citing Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1159 n.3 (3d Cir. 1990)). Similarly, the Supreme Court explained in Varity Corp. v. Howe, ___ U.S. ___, ___, 116 S.Ct. 1065, 1071 (1996), that

a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. ERISA § 3(21)(A) [29 U.S.C.A. 1002(21)(A)]. Varity was both an employer and the benefit plan's administrator [,]

and was therefore acting as a fiduciary only to the extent it acted as an administrator. In Lockheed, the Court concluded that "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." 116 S.Ct. at 1790. This approach was acknowledged by the district court:

Courts have reasoned that an employer who is also a plan administrator acts as a fiduciary only when it functions in its capacity as plan administrator, not when it conducts business that is not regulated by ERISA. Because ERISA does not require the creation of employee pension plans in the first instance, an employer who designs, amends, or terminates a

11

pension benefit plan is not "administering"[the] plan and thus does not act as a fiduciary.

*Walling*, 917 F. Supp. at 319-20 (citations omitted). Nonetheless, the district court failed to recognize the result dictated by this distinction. Because the Trustees were not administering the plan, their amendment was not a fiduciary act.

The jurisprudence of this area is marked by the drawing of a sharp distinction between 1) the sponsors of a plan acting as an administrator (which is discretionary and therefore fiduciary) and 2) the sponsors of a plan amending, altering, terminating, or otherwise redesigning the plan itself (functions considered to be not discretionary and therefore not fiduciary).[1] "Discretion" for the purpose of determining the applicability of fiduciary obligations means solely that the plan administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the plan document itself.

These dichotomies, single-employer/multi-employer and employer/fiduciary, are useful as guideposts in determining whether the fiduciary duty applies. In the particular matter before us, the employer/fiduciary dichotomy unequivocally tells us that the Trustees were _not_ acting as a fiduciary when they amended the Pension Fund's plan design. ERISA clearly states, in pertinent part:

_____

1. See, e.g., Fagan v. National Stabilization Agreement of Sheet Metal Indus. Trust Fund, 60 F.3d 175, 178 (4th Cir. 1995); Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524-25 (5th Cir. 1994); United Paperworkers Int'l Union v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir. 1992); McGann v. H & H Music Co., 946 F.2d 401, 407 (5th Cir. 1991); Hozier, 908 F.2d at 1160-61; Musto v. American Gen. Corp., 861 F.2d at 912 ("[W]hen an employer decides to establish, amend, or terminate a benefits plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards."); Young v. Standard Oil (Indiana), 849 F.2d 1039, 1045 (7th Cir. 1988) ("In short, an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan."); Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1432-33 (9th Cir. 1986); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1471 (11th Cir. 1986); Amato v. Western Union Int'l, Inc., 773 F.2d 1402, 1417 (2d Cir. 1985).

12

Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting <u>management</u> of such plan or exercises any authority or control respecting <u>management or disposition</u> of its assets, (ii) he renders investment advice for a fee . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the <u>administration</u> of such plan.

29 U.S.C.A. § 1002(21)(A) (emphasis added). None of the above-described situations that give rise to thefiduciary duty is present here.

IV.

We reject the district court's statement that the "[t]rustees enacted the amendment to advance non-Pension Fund interests." <u>Walling</u>, 917 F. Supp. at 322. The court simply identified the wrong criteria: since the Trustees, as settlors, were free to scrap the plan altogether, they were free to advance non-Pension Fund interests in making design changes to it.

In sum, the ERISA fiduciary obligations simply do not apply to a plan amendment. <u>See Lockheed</u>, 116 S.Ct. at 1789. The Trustees, acting collectively as settlor, were free to make any amendment that did not run afoul of relevant ERISA regulations. No such regulation was implicated here. <u>See, e.g.</u>, 29 U.S.C.A. § 1054(g)(amendment generally may not decrease accrued plan benefits) and § 1085b (if adoption of an amendment results in underfunding of a defined benefit plan, the sponsor must post security for the amount of the deficiency). Walling and his class had no accrued or vested benefits that were affected by the Trustees' actions. The Pension Fund plan explicitly states:

**12.04 No Vesting in Assets**. No person other than the Trustees of the Pension Fund shall have any right, title, or interest in any of the income or property of any funds received or held by or for the account of the Pension Fund, and no person shall have any vested right to benefits provided by the Pension Plan . .. .

13

App. at 180.

V.

For the reasons stated herein, we will reverse the February 9, 1996, order of the district court. The matter will be remanded to the district court with a direction to enter an order granting the Trustees' motion for summary

judgment.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

14