**Donald H. HALL, etc., Plaintiff,**

v.

**HILL REFRIGERATION, INC., et al., Defendant.**

**No. CV 97–0261 MRP.**

United States District Court, C.D. California.

Feb. 19, 1999.

Karl L. Cambronne, Chestnut & Brooks, P.A., Minneapolis, MN, for plaintiff.

Stuart H. Young, Jr., Hill, Farrer & Burrill, LLP, Los Angeles, CA, for defendants.

Steven M. Rehaut, Gilbert & Sackman, Los Angeles, CA, for defendant James E. Burge.

## OPINION

PFAELZER, District Judge.

### Background

Plaintiff Donald Hall ("Hall"),[1] a beneficiary of the Airconditioning and Refrigeration Industry Pension and Health & Welfare Plans ("the Plans"), alleges that defendants James Steinmetz ("Steinmetz") and James Burge ("Burge") breached ERISA fiduciary duties under 29 U.S.C. §§ 1104–05 and engaged in an ERISA prohibited transaction under 29 U.S.C. § 1106 by approving decreases in the employer contributions required by the Plans without obtaining union ratification of the changes.[2]

---

1. Donald Hall died shortly before these summary judgment motions were heard.. Plaintiff's attorney filed a motion to substitute a party but then stipulated to dismiss that motion.

2. Originally, Hall's complaint also named as defendants the employers who are parties to the collective bargaining agreement. He alleged they had violated 29 U.S.C. § 1145 by failing to pay employer contributions to the funds governed by the Plans. This Court earlier granted summary judgment to the corporate defendants on that claim, thereby dismissing them entirely from the action. The remaining defendants in this case are Burge, Steinmetz, and the Airconditioning and Refrigeration Industry Retirement Trust Fund as a nominal defendant.

The terms of the Plans are governed by a collective bargaining agreement negotiated by representatives of the Airconditioning and Refrigeration Contractors Association of Southern California, Inc. ("ARCA") and the Cold Side Division of Local 250 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Cold Side Division"). ARCA is a multi-employer contractors association representing employers in the air conditioning and refrigeration industries, while the Cold Side Division is a local labor organization representing the employees of those contractors.[3] The Cold Side Division and ARCA periodically negotiate an industry-wide Master Labor Agreement that establishes the terms and conditions of employment for most unionized employers in the air conditioning and refrigeration industries in Southern California. Among the matters determined by the Master Labor Agreement is the rate of employer contributions to the funds governed by the Plans, the Airconditioning and Refrigeration Industry Retirement Trust Fund ("Retirement Fund") and the Airconditioning and Refrigeration Industry Health and Welfare Fund ("Health Fund") (collectively, "the Funds"). The Plans as defined by the Master Labor Agreement are then administered by a board of trustees.

Defendants Steinmetz and Burge play dual roles in this system. Steinmetz and Burge are two of the trustees of the Plans. Steinmetz is also Chief Agent for the Cold Side Division, and Burge is Executive Director of ARCA. Thus, Steinmetz represents the union and Burge represents the contractors in collective bargaining negotiations.

During the time relevant here, there were two consecutive Master Labor Agreements: the 1990–1992 Master Agreement and the 1992–1995 Master Agreement. The parties agree that both Master Agreements were properly ratified by the union and put into effect. The dispute centers on side agreements that Steinmetz and Burge negotiated

and executed during 1991 and 1992 without submitting them to the union for ratification. These side agreements modified the employer contribution rates established by the Master Agreements for the Funds. Plaintiff Hall alleges that Steinmetz and Burge violated the standard of conduct imposed by ERISA on fiduciaries by reducing those rates without union ratification.

The 1990–1992 Master Agreement was effective from September 1, 1990 through August 31, 1992. It set the employees' base hourly wage and fringe benefit packages and also provided for defined increases in those packages during the second year of the agreement. This agreement was ratified by the union and took effect on September 1, 1990.

In 1991, however, the ARCA contractors who specialized in market refrigeration announced that they could not afford to make the scheduled increases in employer contributions to the Funds because of competition from non-union contractors. Based on recommendations from an independent benefits consultant and actuary, Burge and Steinmetz negotiated changes in the contribution rates that had been set by the 1990–1992 Master Agreement. These modifications decreased the Health Fund contributions made by the market refrigeration contractors, but offset that change by increasing the Health Fund contributions from all other contractors, so that the total amount of employer contributions to the Health Fund remained the same. The increase in the Health Fund contributions for non-market refrigeration contractors was then offset by decreasing those contractors' contributions to the Retirement Fund. The net result of these modifications was that the total employer contributions to the Health Fund were at the second year level prescribed by the 1990–1992 Master Agreement, while the total employer contributions to the Retirement Fund were less than the amount originally required by the Agreement.

**3.** Local 250 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada represents workers in the plumbing and piping industry. The Cold Side Division is one of two divisions of Local 250; the other is the Hot Side

Division, which represents employees of industrial mechanical contractors. Because the two divisions have separate labor agreements and employee benefit plans and engage in separate collective bargaining, only the Cold Side Division's activities are relevant to this case.

Steinmetz and Burge executed these amendments to the 1990–1992 Master Agreement in a September 1, 1991 Memorandum of Understanding ("9/1/91 MOU"), which provided that the changes would take effect for a four month trial period. The 9/1/91 MOU was implemented without being submitted to the union for ratification and was effective until the trial period ended on December 31, 1991. On February 26, 1992, Steinmetz and Burge executed another Memorandum of Understanding ("2/26/92 MOU"), agreeing to reimplement the 9/1/91 MOU employer contribution rates for the period of February 1992 through August 1992.

The 1992–1995 Master Agreement was ratified by the union and was effective from September 1, 1992 through August 31, 1995. While it was not identical to the 1990–1992 Master Agreement, the 1992–1995 Master Agreement did not incorporate the employer contribution reductions that were in effect under the 9/1/91 and 2/26/92 MOUs.

Sometime thereafter, Steinmetz and Burge negotiated and executed an undated "1992 Job Targeting Addendum," which allowed contractors to seek union approval to decrease employer contributions for particular jobs due to specific non-union competition. They also negotiated and executed a "Restaurant Work Agreement," which established job targeting provisions solely for refrigeration contractors within the restaurant industry. Neither of these agreements was submitted to the union for ratification.

Hall interprets the union constitution as requiring all agreements between ARCA and the union to be ratified by the union membership. He alleges that as plan trustees, Steinmetz and Burge owed a fiduciary duty to act only for the benefit of the Plans' participants and beneficiaries. *See* 29 U.S.C. §§ 1104–05. Hall claims they breached those duties by changing employer contributions to the Funds for the benefit of ARCA without obtaining the necessary union approval. Hall also alleges that Steinmetz and Burge's agreements ran afoul of ERISA's "prohibited transactions" provisions. *See* 29 U.S.C. § 1106. Because the agreements were not ratified, Hall views the reduction in employer contributions as an unlawful transfer of plan assets to the employer by a fiduciary. Hall moved for partial summary judgment on liability only.

Steinmetz and Burge contend that they were not ERISA fiduciaries for purposes of amending the contribution rates to the Funds, but rather, were acting solely as representatives of the union and ARCA respectively.[4] The defendants moved for summary judgment on all counts.

## Analysis

■ Hall bases his claims against Steinmetz and Burge on their role as ERISA plan trustees. Each of the ERISA provisions on which he relies applies by its terms only to those who are deemed fiduciaries.[5] However, Hall misconstrues the scope of the fiduciary role in an ERISA plan, and hence also the scope of fiduciary duties and liability under ERISA. Steinmetz and Burge's amendment of the employer contribution rate was not within the scope of their authority as trustees. Therefore, in effecting the amendment they were not acting as trustees and were not subject to ERISA's fiduciary requirements.

■ The trustee of an ERISA plan does have well-defined fiduciary duties to the plan. *See* 29 U.S.C. §§ 1104–06. However, he is not subject to those fiduciary duties in all of his life activities. In *Lockheed v. Spink*, the Supreme Court confirmed and extended to pension plans the long-standing rule that " 'only when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management

---

4. Steinmetz and Burge interpret the terms of the union constitution to require ratification only of Master Labor Agreements that are negotiated by an official Local 250 Negotiating Committee. Therefore, they argue in the alternative that the mid-term agreements were effective without ratification, precluding any violation of ERISA law. The Court does not reach this issue, since it concludes that ERISA fiduciary standards do not apply to Steinmetz and Burge's actions.

5. Section 1104 requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104. Section 1105 establishes the circumstances under which a fiduciary is liable for a breach of fiduciary responsibility by a co-fiduciary. *See* 29 U.S.C. § 1105. Section 1106 prohibits fiduciaries from engaging in transactions between the plan and a party in interest. *See* 29 U.S.C. § 1106.

or administration,' does a person become a fiduciary under § 3(21)(A)." 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (quoting *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505 (2d Cir. 1995)).[6]

■ In *Spink,* the Court affirmed that an ERISA fiduciary is only liable as a fiduciary when it is acting as one. Lockheed was both an employer who defined the scope of the ERISA plan and also a fiduciary in its role as plan administrator. *See* 517 U.S. at 886, 116 S.Ct. 1783. It amended the plan to provide increased retirement benefits to employees who agreed to retire early and waive employment-related claims against the company. *See id.* at 885, 116 S.Ct. 1783. Faced with these facts, the Court expressly found that "Lockheed acted not as a fiduciary but as a settlor when it amended the terms of the Plan." *Id.* at 891, 116 S.Ct. 1783. *Spink* expounds the fundamental rule that "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Id.*

■ The holding in *Spink* caps an established trend in Supreme Court and appellate jurisprudence. The Court long ago made clear that collective bargaining activities, such as Steinmetz and Burge's negotiations, do not constitute plan management by the trustee of an ERISA welfare plan. *See NLRB v. Amax Coal Co.,* 453 U.S. 322, 334, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981). In fact, the trustee's fiduciary duty of loyalty to the plan beneficiaries is antithetical to the necessary negotiation and compromise of collective bargaining by which the ERISA plan terms are defined. *See id.* at 336–37, 101 S.Ct. 2789. For that reason, Congress established two distinct realms in the world of an ERISA plan. In the trustee's administrative realm, the terms of the plan cannot be altered. Rather, the trustees are bound by their fiduciary duties to enforce the plan as it exists for the sole benefit of the beneficiaries.

*See id.* But in the realm of collective bargaining, representatives negotiate on behalf of one side or the other to define the scope and terms of the plan. The acts of the union or employer representative in this realm are governed not by fiduciary duties under ERISA, but by the good faith bargaining rules of labor law. The demands of these two sets of rules are not compatible. Thus, even if an employer or union representative also serves as an ERISA trustee, his obligations as representative must be viewed separately from those imposed on him as a trustee. *See id.* at 337 n. 21, 101 S.Ct. 2789.

■ Prior to *Spink,* many appellate courts had already extended the *Amax* rule to the context of ERISA pension plans and even, in some cases, to the specific context of changes to employer contributions like those made by Steinmetz and Burge. In *Hawkins v. Bennett,* the Ninth Circuit distinguished the process of setting employer contributions through collective bargaining, which is not within a trustee's power, from a trustee's proper role in setting benefits and otherwise administering the trust. *See* 704 F.2d 1157, 1159 (9th Cir.1983). Relying on *Amax,* the Ninth Circuit determined that "trustees do not bargain with each other to set the terms of the employer-employee contract; they can neither require employer contributions not required by the original collectively bargained contract, nor compromise the claims of the union or the employer with regard to the latter's contributions." *See id.* at 1159 n. 1. *See also Professional Administrators Ltd. v. Kopper–Glo Fuel, Inc.,* 819 F.2d 639, 644 (6th Cir.1987) ("The amounts to be contributed by an employer to a trust fund are a matter for collective bargaining."); *United Ind. Flight Officers v. United Air Lines,* 756 F.2d 1262, 1268 (7th Cir.1985) ("The administrator of a plan is a fiduciary only to the extent he is engaged in administration. The tasks of administration do not extend to ne-

---

**6.** The Supreme Court recently reaffirmed *Spink*'s holding and extended it to the context of amendments to plans that are supported by on employee contributions. *See Hughes Aircraft Co. v. Jacobson,* —— U.S. ——, 119 S.Ct. 755, 763, 142 L.Ed.2d 881 (1999) (Applicability of ERISA's fiduciary duty provisions depends on "whether the employer's act of amending its plan constituted an exercise of fiduciary duty.... In general,

an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets."). While *Hughes Aircraft* confirms *Spink*'s continuing vitality, it is less analogous than *Spink* to this case because it concerns contributions from employees rather than employers.

gotiating the terms of the governing collective bargaining agreement."); *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498, 505 (2d Cir.1995) (same).

Under *Amax* and *Hawkins,* it was already clear that Steinmetz and Burge's duties with respect to bargaining and agreements to modify the employer contribution rate were outside of the scope of their administrative and fiduciary duties as trustees. The Supreme Court's ruling in *Spink* confirms this conclusion. Since all of the ERISA provisions on which Hall bases his claims apply only to ERISA fiduciaries, none are a basis for liability against Steinmetz and Burge for their amendment of the Plans. It is therefore irrelevant under ERISA fiduciary law whether union rules required ratification of their agreements. The plaintiff's motion for summary judgment is DENIED. The defendants' motion for summary judgment is GRANTED.